1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NUCAL FOODS, INC.,

12              Plaintiff,                          No. CIV S-10-3105 KJM-CKD

13        vs.

14   QUALITY EGG LLC; et al.,                       ORDER

15              Defendants.

16   _____/

17          This matter comes before the court upon the motion for a protective order filed by

18   the Hillandale defendants[1] to stay the deposition of Hillandale's corporate officer, Gary Bartness,

19   noticed subject to Federal Rule of Civil Procedure 30(b)(6).  (ECF 162.)  The court also

20   addresses the Hillandale defendants' request for a sealing order to protect personal medical

21   information that accompanies their motion for a protective order.  (ECF 168.)

22   I.   FACTS AND PROCEDURAL HISTORY

23          The instant matters concern a cross-claim between two defendants.  In the

24   underlying action, plaintiff NuCal filed its amended complaint on January 30, 2012 against eight

25   _____

26          [1] The Hillandale defendants are Hillandale Farms of Iowa, Inc. and Hillandale Iowa,
     LLC.

                                                1

1    defendants — Quality Egg, DeCoster Revocable Trust ("DeCoster Trust"), Austin "Jack"

2    DeCoster, DeCoster Enterprises LLC ("DeCoster Enterprises"), Environ/Wright County Inc.

3    ("Environ"), Hillandale Farms of Iowa, Inc. ("Hillandale Farms"), Hillandale Iowa LLC

4    ("Hillandale LLC"), and Hillandale Farms of PA, Inc. ("Hillandale PA") — alleging eight causes

5    of action: 1) breach of implied warranty of merchantability against Quality Egg, DeCoster Trust,

6    Jack DeCoster, DeCoster Enterprises, Environ, and Hillandale PA; 2) breach of implied warranty

7    of fitness for particular purpose against Quality Egg, DeCoster Trust, Jack DeCoster, DeCoster

8    Enterprises, Environ, and Hillandale PA; 3) breach of express warranty against Quality Egg,

9    DeCoster Trust, Jack DeCoster, DeCoster Enterprises, Environ, and Hillandale PA; 4) fraud

10   against all defendants; 5) negligence against all defendants; 6) equitable indemnification against

11   all defendants; 7) negligent interference with prospective economic advantage against all

12   defendants; and 8) unfair competition[2] against all defendants.

13          Hillandale filed a cross-complaint against co-defendant Quality Egg on February

14   29, 2012, seeking indemnification.  (ECF 67.)  On May 7, 2012, Quality Egg filed a motion to

15   dismiss this cross-complaint, which is still pending.  (ECF 125.)

16          On April 27, 2012, the assigned magistrate judge granted the Hillandale

17   defendants' motion for a protective order staying Federal Rule of Civil Procedure[3] 30(b)(6)

18   depositions due to the medical incapacitation of Gary Bartness, Hillandale's general manager.

19   (ECF 121.)  Plaintiff filed a request for reconsideration of this order on May 2, 2011.  (ECF

20   123.)  This court denied that request as moot on October 5, 2012, as the court had granted

21   Hillandale's motion to amend the scheduling order and extended the discovery deadline by four

22   months, thereby lifting the protective order stay as to the Hillandale 30(b)(6) deposition on May

23   16, 2012 (ECF 136).  (ECF 167.)

24   _____

25          [2] The complaint labels two claims as "seven."  This court identifies the second "seven" as the eighth claim.

26          [3] All future references to rule or rules are to the Federal Rules of Civil Procedure.

2

1    On August 21, 2012, NuCal served a deposition notice on Hillandale to conduct

2  30(b)(6) depositions on September 12 and 13, 2012.  (Toeniskoetter Decl. ¶ 7, ECF 162)  Due to

3  medical incapacitation, Mr. Bartness did not appear; Duane Mangskau, another Hillandale

4  employee, served as Hillandale's sole 30(b)(6) deponent.  (*Id.* ¶ 9.)  Quality Egg asserts that Mr.

5  Mangskau, to prepare for his deposition, met with Mr. Bartness "a couple of times over the last

6  week or so" at work.  (Quality Egg Opp'n to Protective Order at 9-10 n.2, ECF 171.)  Quality

7  Egg further avers that Mr. Mangskau was not prepared to respond to certain significant topics for

8  which Mr. Bartness was the only Hillandale employee with knowledge.  (*Id.* at 3.)  In particular,

9  Mr. Mangskau testified that he did not know, but that Mr. Bartness likely would know, the

10 specific terms of the agreement between Hillandale and Quality Egg regarding the Alden facility

11 and who would be in charge of egg production there.  (*Id.*)  Consequently, on September 14,

12 Quality Egg noticed Hillandale for the deposition of Mr. Bartness, set for September 20 or on

13 some other mutually agreeable date.  (Toeniskoetter Decl. Ex. G.)  Hillandale objected, and the

14 parties conferred on a solution but could not come to an agreement.  (ECF 171 at 3.)  Quality

15 Egg contends that Hillandale notified Quality Egg only the day before the deposition that Mr.

16 Bartness would not attend.  (*Id.* at 4.)  Quality Egg held the deposition on September 20 anyway;

17 no one from Hillandale appeared.  (*Id.* at 5.)  On September 24, 2012, the Hillandale defendants

18 filed the present motion for a protective order to stay the 30(b)(6) deposition of Mr. Bartness,

19 whom Hillandale asserts remains medically incapacitated.  (Hillandale Mot. Protective Order,

20 ECF 162.)  Accompanying the Hillandale motion are affidavits and exhibits containing personal

21 medical information about Mr. Bartness.  The Hillandale defendants also filed a motion to seal or

22 redact these documents to protect Mr. Bartness's privacy.  (ECF 168.)

23 II.  <u>ANALYSIS</u>

24      A.    Standard for Protective Orders

25      Rule 26(c) authorizes a court, for "good cause," to "issue an order to protect a

26 party or person from annoyance, embarrassment, oppression, or undue burden or expense."

1    FED. R. CIV. P. 26(c)(1).  A court can forbid disclosure altogether or place other limitations and

2    conditions upon the disclosure.  FED. R. CIV. P. 26(c)(1)(A)-(H).  This provision "emphasizes the

3    complete control that the court has over the discovery process."  8A CHARLES ALAN WRIGHT,

4    ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2036, at

5    163-64 (3d ed. 2010).  A court has "considerable latitude in focusing on the nature of the harm

6    advanced" to justify an order, and "may be as inventive as the necessities of a particular case

7    require."  *Id.* at 164-65.  A court must balance the competing interests involved in determining

8    whether good cause has been shown.  *In re Coordinated Pretrial Proceedings*, 669 F.2d 620, 623

9    (10th Cir. 1982); *see also Frideres v. Schiltz*, 150 F.R.D. 153, 156-58 (S.D. Iowa 1993)

10   (considering factors such as the deponent's health risks, the doctor's affidavit, deponent's status

11   as a nonparty, the parties' right to information, the importance and singularity of the deponent's

12   testimony, and possible limitations the court could impose).

13          The party requesting a protective order must demonstrate specific facts that

14   support the request, rendering "conclusory or speculative statements about the need for a

15   protective order and the harm which will be suffered without one" insufficient.  *Dunford v. Rolly*

16   *Marine Serv. Co.*, 233 F.R.D. 635, 636-37 (S.D. Fl. 2005) (citing *Gulf Oil v. Bernard*, 452 U.S.

17   89, 102 n.16 (1981); *see also Lexington Ins. Co. v. Sentry Select Ins. Co.*, No. 1:08CV1539 LJO

18   GSA, 2009 WL 4885173, at *3 (E.D. Cal. Dec. 17, 2009) (applying this same standard).  For

19   example, a doctor's affidavit, attesting to an 80-year-old man's life-threatening and severely

20   disabling brain disorder, is enough to meet this standard.  *Dunford*, 233 F.R.D. at 637; *see also*

21   *In re Tutu Water Wells Contamination CERCLA Litig.*, 189 F.R.D. 153, 155-56 (D. V.I. 1999)

22   (finding that the doctor's thorough affidavit — which detailed the 81-year-old's coronary artery

23   disease, angina pectoris, and paroxysmal atrial fibrillation and stated the doctor's belief that a

24   deposition would present a "distinct threat of stroke or heart attack" — warranted a protective

25   order).  On the other hand, doctors' letters and notes that do not indicate what information was

26   provided to the doctor about the proposed deposition and whether, were the deposition

4

1  parameters known, the deponent would still be unable to participate, do not meet this standard.

2  *Id.* at 636; *Cary v. Auto. Ins. Co. of Hartford, Conn.*, 838 F. Supp. 2d 1117, 1124-25 (D. Colo.

3  2011).  A request to deny a deposition altogether is extraordinary and is usually denied.

4  WRIGHT, MILLER & MARCUS § 2037, at 169; *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.

5  1979).

6          B.     Application

7         The Hillandale defendants renew their request to excuse Mr. Bartness from any

8  deposition because his health remains poor.  (ECF 162 at 3.)  Hillandale includes a letter from

9  Mr. Bartness's treating physician, Dr. Derek Johnson; the letter states that Mr. Bartness's current

10  health issues make his participation in a deposition impossible.  (Toeniskoetter Decl. Ex. N.)

11  Dr. Johnson concludes that Mr. Bartness cannot be deposed solely because he would have

12  difficulty responding to questions (*Id.*)  The Hillandale defendants aver that Mr. Bartness's

13  illness, as framed by Dr. Johnson's letter, rises to the "good cause" standard demanded by Rule

14  26(c).

15         Quality Egg responds with two primary arguments.  First, Quality Egg argues that

16  Dr. Johnson's letter does not address the impact a deposition would have on Mr. Bartness's

17  health.  (ECF 171 at 6-8.)  Even if the letter did address this, Quality Egg contends, it is not clear

18  what information the doctor was given about the deposition, such as time, place, number of

19  participants, and such.  (ECF 171 at 8-9.)  Additionally, Quality Egg maintains that the form of

20  the doctor's opinion — a letter rather than sworn testimony or an affidavit — weakens its

21  import. (ECF 171 at 9.)  Second, Quality Egg argues that precluding Mr. Bartness's deposition

22  would unduly prejudice Quality Egg.  (ECF 171 at 10-12.)  Mr. Bartness has the primary

23  management responsibility of Hillandale; as such, Quality Egg contends that only Mr. Bartness

24  can speak about a purported lease the parties entered into, something Mr. Mangskau partly

25  confirmed in his deposition.  (*Id.*)  This lease is pivotal to Hillandale's indemnification claim

26  against Quality Egg, and therefore to Quality Egg's defense of that claim.  (*Id.*)  Quality Egg

1    argues that it would be particularly prejudiced if Mr. Bartness testified at trial without Quality

2    Egg having the benefit of deposing him.  (*Id.* at 10.)

3              In balancing the competing interests, the court does not find good cause sufficient

4    to grant Hillandale's motion.  First, Dr. Johnson's letter, both in content and form, does not

5    establish the extraordinary circumstances necessary to establish good cause.  Dr. Johnson does

6    not assert that a deposition would harm Mr. Bartness, pose a threat to his health, or exacerbate

7    his condition.  *Cf. Tutu Water Wells*, 189 F.R.D. at 155-56 (doctors' affidavit stated that the

8    deposition threatened the deponent's life).  Rather, it appears Mr. Bartness will only have some

9    difficulty responding to questions.  Further, nothing in Dr. Johnson's short letter demonstrates he

10   had information on the particulars of the proposed deposition.  The fact that Dr. Johnson's

11   medical opinion is provided in a letter, rather than in sworn testimony or in an affidavit, also

12   weakens the Hillandale defendants' argument.  *Dunford*, 233 F.R.D. at 636 (stating that a

13   "doctor's note" is not sufficient to "support the very heavy burden . . . to prevent a deposition

14   from taking place altogether").  Given that Mr. Bartness is going into work several times a week

15   for a few hours at a time, he should be able to sit for a deposition with appropriate breaks.  (*See*

16   ECF 171 at 12 (citing Mr. Mangskau's deposition).)

17             Second, although Mr. Bartness is not a party to this action, he is the primary

18   manager and part-owner of a party, and his testimony is indispensable to the indemnification

19   claim of the Hillandale defendants against Quality Egg.  The Hillandale defendants appear

20   unable to produce another representative that can fulfill the Rule 30(b)(6) obligations.  While

21   Mr. Mangskau has stated he cannot answer some of Quality Egg's questions about the purported

22   lease agreement between Hillandale and Quality Egg, Mr. Bartness probably can.  (ECF 171 at

23   12 (citing Mr. Mangskau's deposition).)  The testimony Quality Egg requires is not forthcoming

24   from any other source.  *See Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir. 2003)

25   /////

26   /////

1   (stating that if desired discovery information is obtainable from another employee, this weighs in

2   favor of the party seeking to quash a deposition).

3          The Hillandale defendants' motion is denied.

4          C.       Request to Seal

5          There is a presumption in favor of public access to court records.  *Phillips v. Gen.*

6   *Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  However, "access to judicial records is not

7   absolute."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  "[I]f

8   the court decides to seal certain judicial records [after conscientiously balancing the competing

9   interests of the public and the party who seeks to keep certain judicial records secret], it must

10  'base its decision on a compelling reason and articulate the factual basis for its ruling, without

11  relying on hypothesis or conjecture.'"  *Id.* at 1179 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430,

12  1434 (9th Cir. 1995)).  "In general, 'compelling reasons' sufficient to outweigh the public's

13  interest in disclosure and justify sealing court records exist when such 'court files might become

14  a vehicle for improper purposes,' such as the use of records to gratify private spite, promote

15  public scandal, circulate libelous statements, or release trade secrets."  *Id.* (quoting *Nixon v.*

16  *Warner Communs., Inc.*, 435 U.S. 589, 598 (1978)).  However, "'good cause' suffices to warrant

17  preserving the secrecy of sealed discovery material attached to nondispositive motions.  *Foltz v.*

18  *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Phillips*, 307 F.3d at

19  1213).

20          The court has advised parties to this action of its sealing procedure: All requests

21  to seal or redact shall be governed by Local Rules 141 (sealing) and 140 (redaction); protective

22  orders shall not govern the filing of sealed or redacted documents on the public docket. The

23  court will only consider requests to seal or redact filed by the proponent of sealing or redaction.

24  If a party plans to make a filing that includes material an opposing party has identified as

25  confidential and potentially subject to sealing, the filing party shall provide the opposing party

26  /////

with sufficient notice in advance of filing to allow for the seeking of an order of sealing or redaction from the court.

The Hillandale defendants seek to redact portions of several documents and to file one document under seal, as these documents contain sensitive information concerning Mr. Bartness's diagnosis, treatment, and/or prognosis. Specifically, they seek to seal or redact the following:

1.  Memorandum in Support of Hillandale's Motion for Protective Order (redactions to pages designated as 3-6, 8 and 12-13);

2.  Declaration of Steven Toeniskoetter (redactions to pages designated as 15 and 17);

3.  Portions of Exhibits A, B, C, D, F, H, and J to the Declaration of Steven Toeniskoetter that contain discussion of the specifics of Mr. Bartness's condition, prognosis, and/or treatment (redactions to pages designated as 20, 22, 24-25, 51, 53, 60, and 66); and

4.  Exhibit N to the Declaration of Steven B. Toeniskoetter, consisting of a letter from Mr. Bartness's doctor, Dr. Derek R. Johnson, dated September 19, 2012 (sealed, pages designated 82-83).

(Hillandale Req. Seal at 3, ECF 168.)

This court has addressed and granted a similar request in this case. (ECF 136.) Although these documents are private materials filed in connection with a non-dispositive motion, they are not discovery materials; therefore, sealing must be based on a compelling reason. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); *Oliner v. Kontrabecki*, No. Misc. 04-0010 CRB, 2011WL 6337503, at *2 (N.D. Cal. Dec. 19, 2011) (good cause standard applies to "private materials unearthed during discovery"). In determining whether compelling reasons exist for sealing these materials, the court considers, among other things, "the public interest in understanding the judicial process and whether disclosure of the

1 material could result in improper use of the material for scandalous or libelous purposes or

2 infringement upon trade secrets," *Pintos*, 605 F.3d at 679 n.6 (internal quotation omitted), and

3 the recognition of the need for medical privacy as expressed in statutory and decisional law. *See*

4 *Foltz*, 331 F.3d at 1131 (recognizing need to protect information in medical records identifying

5 third parties); *San Ramon Reg'l. Med. Ctr., Inc. v. Principal Life Ins. Co.*, No. C 10- 02258 SBA,

6 2011 WL 89931, at *1 n.1 (N.D. Cal. Jan. 10, 2011) (sealing, sua sponte, third party medical

7 records submitted by a litigant).

8          As this court has noted previously, Mr. Bartness's medical information sheds no

9 light on the workings of the federal courts.  Further, Mr. Bartness's health is not at issue in this

10 case, and the medical information the Hillandale defendants seek to seal or redact is sensitive

11 and private.  Therefore, the court grants in part Hillandale's requests to redact and to seal, insofar

12 as Mr. Bartness's diagnosis, treatment, and/or prognosis is mentioned.  Exhibit D to the

13 Toeniskoetter Declaration, however, will not be sealed, as it contains no information relating to

14 Mr. Bartness's medical condition.

15 III.   CONCLUSION

16          Based on the foregoing, the request for a protective order is DENIED, and the

17 motion to seal is GRANTED in part.  The Hillandale defendants shall file all documents, with

18 approved redactions only, on the public docket.  Exhibit D shall not be redacted or sealed.

19 Exhibit N to the Toeniskoetter Declaration shall be filed under seal.  The Hillandale defendants

20 shall also file under seal unredacted copies of the documents for which redaction is approved

21 under seal.

22          IT IS SO ORDERED.

23 DATED:  December 18, 2012.

24

25                                        _____
                                         UNITED STATES DISTRICT JUDGE

26