1

2

3

4

5

6

7

8      IN THE UNITED STATES DISTRICT COURT

9      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NUCAL FOODS, INC.,

11          Plaintiff,                              No. CIV S-10-3105 KJM-CKD

12       vs.

13   QUALITY EGG LLC; et al.,

14          Defendants.                             ORDER

15   _____/

16          This matter comes before the court on the motion to dismiss in part plaintiff's first

17   amended complaint filed by defendants Hillandale Farms of Iowa, Inc. ("Hillandale Farms"),

18   Hillandale Farms of PA, Inc. ("Hillandale PA") and Hillandale Iowa LLC ("Hillandale LLC")

19   (together, "defendants"). (ECF 66.) This motion was decided without a hearing. For the

20   following reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part.

21   I.    ALLEGED FACTS AND PROCEDURAL HISTORY

22          This case arises out of a massive recall in August 2010 of shell eggs precipitated

23   by an outbreak of salmonella enteritidis ("SE") that sickened as many as 62,000 people. (First

24   Am. Compl. ¶ 1) ("FAC"). Plaintiff alleges that defendants became aware of a heightened risk

25   of SE contamination at defendants' farms in early 2010. (*Id.* ¶ 6.) Plaintiff further alleges that

26   defendants had actual knowledge, no later than March 2010, that many of their chicken houses

1

1   were contaminated with SE, and that by June 2010, their hens also had tested positive for SE.

2   (*Id.* ¶¶ 5, 7.)  Plaintiff avers that despite this knowledge, defendants continued to sell plaintiff

3   eggs from contaminated farms without warning plaintiff or regulators and without conducting

4   tests on eggs from contaminated farms.  (*Id.* ¶ 9.)

5              On July 9, 2010, new federal egg safety rules took effect.  (*Id.* ¶ 13.)  These rules

6   require SE positive farms to divert eggs to other facilities or to keep them out of the market until

7   tests confirm they are contamination free.  (*Id.*)  Plaintiff alleges defendants, through omissions

8   and misrepresentations, failed to comply with these new rules; for example, defendants

9   represented they would notify plaintiff of any SE positive environmental tests involving farms

10  that produced eggs plaintiff purchased.  (*Id.* ¶¶ 156-157.)  Plaintiff alleges defendants acted upon

11  their knowledge of the SE positive tests only when the FDA stepped in.  (*Id.* ¶ 15.)  Defendants

12  then tested eggs produced at their farms and discovered about 170 SE-infected eggs.  (*Id.* ¶ 16.)

13  Defendants finally instituted a recall in August 2010.  (*Id.* ¶ 1.)  Before, during and after the

14  recall, defendants allegedly obfuscated and failed to cooperate fully with the FDA and with the

15  U.S. House of Representatives' inquiry into the SE outbreak.  (*Id.* ¶¶ 15, 17.)

16             Plaintiff filed its initial complaint on November 18, 2010, alleging seven causes

17  of action against three defendants, Quality Egg LLC ("Quality Egg"), Wright County Egg, and

18  Hillandale Farms.  (ECF 1.)  The court granted plaintiff's motion to amend on January 27, 2012

19  (ECF 60) and plaintiff filed its amended complaint on January 30, 2012 (ECF 61).  The amended

20  complaint names eight defendants — Quality Egg, DeCoster Revocable Trust ("DeCoster

21  Trust"), Austin "Jack" DeCoster, DeCoster Enterprises LLC ("DeCoster Enterprises"),

22  Environ/Wright County Inc. ("Environ"), Hillandale Farms, Hillandale LLC, and Hillandale PA

23  — alleging eight causes of action: 1) breach of implied warranty of merchantability against

24  Quality Egg, DeCoster Trust, Jack DeCoster, DeCoster Enterprises, Environ, and Hillandale PA;

25  2) breach of implied warranty of fitness for particular purpose against Quality Egg, DeCoster

26  Trust, Jack DeCoster, DeCoster Enterprises, Environ, and Hillandale PA; 3) breach of express

2

1    warranty against Quality Egg, DeCoster Trust, Jack DeCoster, DeCoster Enterprises, Environ,

2    and Hillandale PA; 4) fraud against all defendants; 5) negligence against all defendants;

3    6) equitable indemnification against all defendants; 7) negligent interference with prospective

4    economic advantage against all defendants; and 8) unfair competition.[1]

5                On August 15, 2012, defendants Jack DeCoster, DeCoster Trust, DeCoster

6    Enterprises, and Environ/Wright County were dismissed from this action for lack of personal

7    jurisdiction.  (ECF 156.)  The remaining defendants are the three Hillandale entities and Quality

8    Egg.

9                The Hillandale defendants filed the motion addressed by this order on

10   February 29, 2012, seeking to dismiss claims I and II against Hillandale PA and claims V and

11   VII against all three Hillandale defendants.  (ECF 66.)  Defendants contend these claims are

12   barred by the economic loss rule.  (*Id.* at 5.)  On April 20, 2012, the Hillandale defendants

13   withdrew their motion as to claims I and II.  (ECF 115 at 3.)  Therefore, the court will consider

14   only defendants' arguments seeking to dismiss plaintiff's negligence-based claims, claims V and

15   VII.

16   II.    STANDARD

17                Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

18   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

19   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

20   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

21   1990).

22                Although a complaint need contain only "a short and plain statement of the claim

23   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

24   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

25   _____

26   [1] The complaint labels two claims as "seven."  This court identifies the second "seven" as
     the eighth claim.

3

1    claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2    (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include

3    something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or

4    "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"

5    *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion

6    to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court

7    to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry

8    focuses on the interplay between the factual allegations of the complaint and the dispositive

9    issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

10            In making this context-specific evaluation, this court "must presume all factual

11   allegations of the complaint to be true and draw all reasonable inferences in favor of the

12   nonmoving party."  *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  This rule

13   does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*,

14   478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that

15   contradict matters properly subject to judicial notice" or to material attached to or incorporated

16   by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

17   2001).  A court's consideration of documents attached to a complaint or incorporated by

18   reference or matter of judicial notice will not convert a motion to dismiss into a motion for

19   summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

20   III.   APPLICATION

21            Plaintiff alleges wide-ranging damages, including lost sales, lost profits, recall-

22   related administrative costs, and the loss of goodwill and reputation for the recalled brands.

23   (FAC ¶ 163.)  Plaintiff also alleges its buyers have demanded credit for the recalled eggs and for

24   their incidental and consequential costs related to the recall, and demanded that certain brand

25   names be retired due to the recall.  (FAC ¶ 163.)  Plaintiff further seeks compensatory damages

26   because it "has suffered lost future business and sales from customers who have blamed NuCal

1    for the disruption, loss of goodwill and food safety panic that resulted from the defendants'

2    negligence and misconduct, or who have associated NuCal and NuCal's brands with the

3    defendants' negligence and misconduct." (*Id.* ¶ 174.)  The Hillandale defendants contend

4    "[e]ach of NuCal's claims for damages on the basis of negligence involve [sic] pure economic

5    loss damages under California law." (Mot. at 7-8, ECF 66.)  Plaintiff concedes its economic

6    losses "include the reduced value of the eggs recalled by Hillandale"; "the costs of shipping and

7    disposing of the Hillandale recalled eggs"; and "the profits that were lost when the Hillandale

8    eggs were recalled." (Opp'n at 9, ECF 96.)

9              However, plaintiff contends its losses were not limited to those arising from

10   defendants' defective eggs; rather, its recall "necessarily included all eggs that NuCal processed

11   on the dates when the defendants' SE-tainted eggs were in NuCal's processing plants." (*Id.*)

12   Specifically, plaintiff alleges that its losses also included "the product cartons and other

13   materials that NuCal used to package the defendants' SE-tainted eggs" and "[t]he destruction of

14   eggs from other sources, as well as the destruction of packaging materials." (*Id.*)  These losses,

15   plaintiff contends, constitute damages to other property that takes plaintiff's negligence claims

16   outside of the economic loss rule  (*Id.*)

17             Defendants counter that most of this damage to other property is not pled in the

18   FAC.  (Reply at 3-4, ECF 115.)  Those damages pled in the First Amended Complaint under

19   negligence are also alleged under plaintiff's breach of contract and warranty claims, suggesting

20   plaintiff in fact views these damages as economic.  (*Id.*)  In any event, defendants contend all of

21   these damages stem from plaintiff's "disappointed economic expectations" and therefore are

22   barred by the economic loss rule.  (*Id.*)  Defendants also argue no exceptions to the economic

23   loss rule exist: they owed plaintiff no legal duty independent of the contract and no special

24   relationship existed between the parties.  (*Id.* at 4-7.)

25   /////

26   /////

A.      The Economic Loss Rule

Generally, purely economic losses are not recoverable in tort. *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 16-17 (Cal. 1965). Put simply, "the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004) (quoting *Rich Products Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999)). However, a plaintiff can recover in tort after a contract breach in three situations. First, when a "product defect causes damage to 'other property,' that is, property other than the product itself." *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (Cal. 2002) (emphasis omitted). Second, when a defendant breaches a legal duty independent of the contract, irrespective of whether damages are economic. *Robinson*, 34 Cal. 4th at 989. Third, if a "special relationship" existed between the parties, a party can still recover when the economic loss rule would otherwise apply. *J'aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (Cal. 1979).

"Economic loss . . . has been defined as the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. 'Economic loss generally means pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair together with consequential lost profits *when there has been no claim of personal injury or damage to other property*.'" *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 44 Cal. Rptr. 2d 305, 310 n.5 (Cal. Ct. App. 1995) (quoting *MDU Res. Group v. W.R. Grace & Co.*, 14 F.3d 1274, 1279 (8th Cir. 1994) (emphasis in original)).

B.      Application to Plaintiff's Negligence Claims

1.      Plaintiff Sufficiently Pleads Damage to "Other Property"

The court finds the economic loss rule does not entirely bar plaintiff's negligence claims because plaintiff has sufficiently pled damage to "other property." In support of its contention that it suffered damage to other property — other eggs and materials unrelated to the

Hillandale contract — plaintiff cites to two paragraphs in the First Amended Complaint:

> In accordance with usual practice in the industry, NuCal sold the eggs it purchased from "Wright County Egg" and Hillandale together with eggs from other sources. NuCal sold and distributed these eggs to several retail customers.
>
> As a result of defendants' conduct, NuCal also faces a loss of business for egg brands that it sold and that have now become associated with the defendants' practices. At least one NuCal customer refused to accept further shipments of cartons bearing a brand name that was included in the recall. The defendants' conduct also resulted in a decline in egg sales by NuCal and others.

(FAC, ¶¶ 92, 104.) The product at issue here, for the purposes of economic loss analysis, comprises the Hillandale defendants' eggs. If plaintiff has sufficiently alleged damage to property other than Hillandale eggs, then the economic loss rule does not apply.

The court can reasonably infer from the two paragraphs in the complaint and other alleged facts that plaintiff plausibly suffered damages to other property, such as "[t]he destruction of eggs from other sources, as well as the destruction of packaging materials . . . ." (*Cf.* ECF 96 at 9.)  *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987) (in evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party")).  Plaintiff pleads that defendants' eggs were packaged with eggs from other suppliers; therefore, it is plausible that eggs with different origins were recalled together.  (FAC ¶¶ 92, 104.)  The court infers that some quotient of eggs and packing materials affected by the recall are not related to the "product itself," that is, Hillandale eggs.  (FAC ¶ 163.)  Further, it is plausible that eggs (and associated packing materials) recalled for SE contamination are physically destroyed.  Therefore, it is plausible from the allegations in the First Amended Complaint that "other property" was physically damaged as a result of defendant's alleged negligence.  (*See* ECF 97 at 10 (stating that recalled eggs, cartons, and packaging were "necessarily destroyed").)  Such damages beyond the contemplation of the parties in their contractual bargain fall outside the scope of the

1    economic loss rule.  *Robinson*, 34 Cal. 4th at 988-89 ("[W]here a purchaser's expectations in a

2    sale are frustrated because the product he bought is not working properly, his remedy is said to

3    be in contract alone . . . unless he can demonstrate harm above and beyond a broken contractual

4    promise . . . regardless of the terms of any warranty." (citing *Jimenez*, 29 Cal. 4th at 482)); *see*

5    *also Erlich v. Menezes*, 21 Cal. 4th 543, 550-51 (Cal. 1999) (discussing the different roles

6    contract and tort law damages fulfill).

7              Public policy rationales utilized by the California Supreme Court in economic

8    loss cases also weigh in favor of allowing plaintiff's negligence claims to proceed.  In *Robinson*,

9    the court held that tort damages are particularly appropriate in instances where a defendant's

10   conduct violates social policy.  54 Cal. 4th at 993 (stating "parties cannot, and should not, be

11   expected to anticipate fraud and dishonesty in every transaction" (quotation marks and citations

12   omitted)).  Even if plaintiff accounted for the wide-ranging consequences of possible SE

13   contamination when it contracted with defendants, plaintiff could not be expected to consider

14   defendants' deliberate misrepresentations or material omissions regarding SE contamination.

15   Some amount of plaintiff's non-economic damages may be attributable to defendants' alleged

16   misconduct, which misconduct is the province of torts, as opposed to contract law, to deter.  *Id.*

17   at 992-93.  In so concluding, the court is "careful to apply tort remedies only when the conduct

18   in question is so clear in its deviation from socially useful business practices that the effect of

19   enforcing such tort duties will be . . . to aid rather than discourage commerce."  *Id.* at 992

20   (quoting *Erlich*, 21 Cal. 4th at 554).

21             The remainder of plaintiff's alleged damages, including loss of reputation and lost

22   profits and sales, is covered by the economic loss rule and cannot sound in tort.  This kind of

23   damage is "pecuniary damage that occurs through loss of value or use of the goods sold or the

24   cost of repair together with consequential lost profits . . . ."  *San Francisco Unified Sch. Dist.*,

25   44 Cal. Rptr. 2d at 310 n.5; *see also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N.*

26   *Am., Inc.*, No. CV F 07-1614 LJO TAG, 2008 WL 1994947, at *6 (E.D. Cal. May 6, 2008)

1   (holding reputational and other damages not associated with property damage or personal injury

2   are not recoverable in tort); *Carrau v. Marvin Lumber and Cedar Co.*, 112 Cal. Rptr. 2d 869

3   (Cal. Ct. App. 2001) (holding recovery for the diminished value of a house in which defective

4   windows were installed is barred by the economic loss rule).

5           Defendants also argue that plaintiff's damages pleading is disingenuous because

6   plaintiff claims identical damages under its breach of contract and breach of warranty actions as

7   it does under its negligence actions.  (ECF 115 at 4.)  Defendants thereby imply that plaintiff

8   considers these damages "economic" for purposes of the economic loss doctrine.  This argument

9   has no merit, as plaintiff may plead inconsistent claims.  FED. R. CIV. P. 8(d)(3).

10          2.      Exceptions to the Economic Loss Rule Do Not Apply

11          Plaintiff's contention that it can still recover for economic damages in light of

12   exceptions to the economic loss rule fails as a matter of law.  Plaintiff avers defendants breached

13   a duty independent of the contract; in the alternative, plaintiff asserts a "special relationship"

14   existed between the parties.  (ECF 97 at 11-12.)  Even if the court found defendants breached a

15   duty independent of the contract, this fact could not sustain plaintiff's negligence claims.  While

16   *Robinson* holds that the independent duty exception to the economic loss rule can apply to

17   claims of intentionally tortious conduct, there is no authority to suggest this exception can apply

18   to negligent conduct.  *Robinson*, 34 Cal. 4th at 991.

19          The court also finds that no special relationship existed between the parties.  To

20   determine whether a special relationship exists, courts must examine six factors: 1) the extent to

21   which the transaction was intended to affect the plaintiff; 2) the foreseeability of harm to the

22   plaintiff; 3) the degree of certainty that the plaintiff suffered injury; 4) the closeness of the

23   connection between the defendant's conduct and the injury suffered; 5) the moral

24   blameworthiness of defendant's conduct; and 6) policy considerations to prevent future harm.

25   *J'aire Corp.*, 24 Cal. 3d 804.  The first factor alone may be dispositive: to satisfy it, a party must

26   demonstrate the relevant transaction "affect[ed] the plaintiff in particular as opposed to similarly

1    situated purchasers." *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, No. C 96-2494 CW,

2    2009 WL 1636036, at *5 (N.D. Cal. June 8, 2009); *Ott v. Alfa-Laval Agri, Inc.*, 37 Cal. Rptr. 2d

3    790, 802 (Cal. Ct. App. 1995) ("[T]o the extent the milking system was intended to affect the

4    plaintiffs in the same way as all retail buyers, this becomes a traditional products liability or

5    negligence case in which economic damages are not available.") (citing *Seely*, 63 Cal. 2d at 16-

6    17).

7            Plaintiff cites the First Amended Complaint to support its contention that the egg

8    sales at issue here were "intended to affect" NuCal.  (FAC, ¶¶ 162, 172; ECF 97 at 13.)  Those

9    paragraphs do not demonstrate that defendants' sale of eggs were intended peculiarly to affect

10   plaintiff as opposed to all other purchasers similarly situated.  They simply state defendants sold

11   eggs to plaintiff knowing plaintiff would repackage them with other brands of eggs.  The court

12   declines to find a special relationship in this case, converting a negligent breach of contract into

13   a tort action.  *See Erlich*, 21 Cal. 4th at 550-51 (describing the different goals of tort and contract

14   law and lamenting the rise of "con*torts*") (original emphasis).

15           In sum, the economic loss rule bars plaintiff, on its negligence theories, from

16   recovering damages other than the alleged physical damage to other property.

17   C.      Leave to Amend

18           Courts should consider four factors when considering leave to amend: 1) undue

19   delay; 2) bad faith; 3) futility of amendment; and 4) prejudice to the opposing party.  *Levine v.*

20   *Safeguard Health Enterprises, Inc.*, 32 Fed. App'x 276, 278 (9th Cir. 2002) (internal citations

21   and quotations omitted).  In this order, the court dismisses plaintiff's negligence claims insofar

22   as they provide an alleged basis for recovering for damages that are not for physical damage to

23   other property.

24           While this case has been pending for more than two years, plaintiff has shown no bad

25   faith.  The opposing parties would not be unduly prejudiced if plaintiff were given leave to

26   amend.  However, the court finds the third factor weighs most heavily here: given the court's

reasons for dismissing the negligence claims in part, amendment would be futile.  The court has trimmed plaintiff's negligence claims to the parameters set by law; additional pleading would do nothing to adjust those parameters.  Leave to amend is denied.

III.   <u>CONCLUSION</u>

          For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part, as follows:

       1.     Negligence claims V and VII may proceed only as to the physical damage plaintiff suffered to other property, as described in this order; and

       2.     Leave to amend these claims is denied.

The court further ORDERS that:

       1.     Plaintiff file amended pleadings consistent with this order by February 15, 2013; and

       2.     The status conference set for February 21, 2013 is vacated and reset for March 7, 2013.

          IT IS SO ORDERED.

DATED:  January 14, 2013.

_____
UNITED STATES DISTRICT JUDGE