1
2
3
4
5
6
7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NUCAL FOODS, INC.,

11            Plaintiff,                    No. CIV S-10-3105 KJM-CKD

12        vs.

13   QUALITY EGG LLC; et al.,

14            Defendants.                   <u>ORDER</u>

15   _____/

16            This matter comes before the court on defendant Quality Egg's motion to dismiss

17   four of five cross claims brought by codefendant Hillandale Farms of Iowa, Inc. ("Hillandale").

18   (ECF 125.)  This motion was decided without a hearing.  For the following reasons, Quality

19   Egg's motion to dismiss is DENIED in part and GRANTED in part.

20   I.      <u>PROCEDURAL HISTORY AND ALLEGED FACTS</u>

21            This case arises out of a massive recall in August 2010 of shell eggs precipitated

22   by an outbreak of salmonella enteritidis ("SE") that sickened as many as 62,000 people.  (First

23   Am. Compl. ¶ 1) ("FAC").  Plaintiff NuCal filed its initial complaint on November 18, 2010,

24   alleging seven causes of action against three defendants, Quality Egg LLC ("Quality Egg"),

25   Wright County Egg, and Hillandale Farms.  (ECF 1.)  The court granted plaintiff's motion to

26   /////

1    amend on January 27, 2012 (ECF 60) and plaintiff filed its amended complaint on January 30,

2    2012 (ECF 61).

3              The amended complaint names eight defendants ("defendants") — Quality Egg,

4    DeCoster Revocable Trust ("DeCoster Trust"), Austin "Jack" DeCoster, DeCoster Enterprises

5    LLC ("DeCoster Enterprises"), Environ/Wright County Inc. ("Environ"), Hillandale Farms,

6    Hillandale LLC, and Hillandale PA — and alleges eight causes of action: 1) breach of implied

7    warranty of merchantability against Quality Egg, DeCoster Trust, Jack DeCoster, DeCoster

8    Enterprises, Environ, and Hillandale PA; 2) breach of implied warranty of fitness for particular

9    purpose against Quality Egg, DeCoster Trust, Jack DeCoster, DeCoster Enterprises, Environ,

10   and Hillandale PA; 3) breach of express warranty against Quality Egg, DeCoster Trust, Jack

11   DeCoster, DeCoster Enterprises, Environ, and Hillandale PA; 4) fraud against all defendants;

12   5) negligence against all defendants; 6) equitable indemnification against all defendants;

13   7) negligent interference with prospective economic advantage against all defendants; and

14   8) unfair competition.[1]   On August 15, 2012, defendants Jack DeCoster, DeCoster Trust,

15   DeCoster Enterprises, and Environ/Wright County were dismissed from this action for lack of

16   personal jurisdiction.  (ECF 156.)  The remaining defendants are the three Hillandale entities and

17   Quality Egg.

18             On February 29, 2012, defendant Hillandale Farms of Iowa, Inc. ("Hillandale")

19   filed a cross-claim against codefendant Quality Egg.  (ECF 67.)  Hillandale alleged five causes

20   of action: 1) equitable indemnity; 2) breach of implied warranty of merchantability; 3) breach of

21   implied warranty of fitness for a particular purpose; 4) contribution; and 5) apportionment.  The

22   motion addressed by this order is Quality Egg's motion to dismiss all but the merchantability

23   claim.

24   /////

25   _____

26   [1] The complaint labels two claims as "seven."  This court identifies the second "seven" as the eighth claim.

2

1    At all times relevant to this action, plaintiff NuCal purchased eggs from

2  defendants through a commercial exchange called "Egg Clearinghouse, Inc." ("ECI").  (*Id.* ¶ 79.)

3   Plaintiff alleges that defendants became aware of a heightened risk of SE contamination at

4  defendant's farms in early 2010.  (*Id.* ¶ 6.)  Plaintiff further alleges that defendants had actual

5  knowledge, no later than March 2010, that many of their chicken houses were contaminated with

6  SE, and that by June 2010, their hens also had tested positive for SE.  (*Id.* ¶¶ 5, 7.)  Plaintiff

7  avers that despite this knowledge, defendants continued to sell plaintiff eggs from contaminated

8  farms without warning plaintiff or regulators and without conducting tests on eggs from

9  contaminated farms.  (*Id.* ¶ 9.)

10    On July 9, 2010, new federal egg safety rules took effect.  (*Id.* ¶ 13.)  These rules

11  require SE positive farms to divert eggs to other facilities or to keep them out of the market until

12  tests confirm they are contamination free.  (*Id.*)  Plaintiff alleges defendants, through omissions

13  and misrepresentations, failed to comply with these new rules; for example, defendants

14  represented they would notify plaintiff of any SE positive environmental tests involving farms

15  that produced eggs plaintiff purchased.  (*Id.* ¶¶ 156-157.)  Plaintiff alleges defendants acted upon

16  defendants' knowledge of the SE positive tests only when the FDA stepped in.  (*Id.* ¶ 15.)

17  Defendants then tested eggs produced at their farms and discovered about 170 SE-infected eggs.

18  (*Id.* ¶ 16.)  Defendants finally instituted a recall in August 2010.  (*Id.* ¶ 1.)  Before, during and

19  after the recall, defendants allegedly obfuscated and failed to cooperate fully with the FDA and

20  with the U.S. House of Representatives' inquiry into the SE outbreak.  (*Id.* ¶¶ 15, 17.)

21    In defendant Hillandale's crossclaim against Quality Egg, Hillandale alleges it

22  procured the allegedly contaminated eggs it sold to plaintiff from Quality Egg's farms.  (ECF 67

23  at 37.)  Hillandale further alleges it learned of Quality Egg's involvement in a potential SE

24  outbreak only in mid-August 2010.  (*Id.*)  Prior to this time, Hillandale alleges it had no

25  knowledge of any SE-positive test results at the Quality Egg facility from which it received its

26  eggs.  (*Id.* at 38.)  Hillandale alleges that Quality Egg owned and managed the farm and all

1   related production articles, including the hens and pullets. (*Id.* at 38-39.)  Any processing

2   Hillandale may have conducted on these Quality Egg eggs related solely to the outside of the

3   eggs, Hillandale alleges; therefore, because the SE contamination was found inside the eggs, not

4   on the shell, any contamination was caused by Quality Egg.  (*Id.*)

5   II.   STANDARD

6          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

7   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

8   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

9   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

10  1990).

11         Although a complaint need contain only "a short and plain statement of the claim

12  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

13  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

14  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

15  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include

16  something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or

17  "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"

18  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion

19  to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court

20  to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry

21  focuses on the interplay between the factual allegations of the complaint and the dispositive

22  issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

23         In making this context-specific evaluation, this court "must presume all factual

24  allegations of the complaint to be true and draw all reasonable inferences in favor of the

25  nonmoving party."  *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  This rule

26  does not apply to "'a legal conclusion couched as a factual allegation,'"  *Papasan v. Allain*,

478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

III.    APPLICATION

Quality Egg makes two primary arguments in its motion to dismiss. First, it avers Hillandale's three loss-sharing claims (equitable indemnity, contribution, and apportionment) should be dismissed wholly or in part because they are not ripe, are duplicative, and are partly premised upon non-tortious conduct. (Quality Egg Mot. to Dismiss at 4-7, ECF 125.) Second, Quality egg asserts Hillandale has failed to plead facts necessary to sustain its implied warranty of fitness claim. (*Id.* at 7-9.)

A.    Loss-Sharing Claims

1.    Ripeness

Quality Egg argues Hillandale's three loss-sharing claims are not ripe because Hillandale has not been found liable and has not paid plaintiff damages. (ECF 125 at 4.) Quality Egg cites a state appellate court case, *Major Clients Agency v. Diemer*, 67 Cal. App. 4th 1116, 1131 (Cal. Ct. App. 1988), which sustained a demurrer on a cross-claim for equitable indemnity that did not plead that a liability had been discharged that the other party should pay. (*Id.*) Hillandale contends ripeness is not an issue as to its equitable indemnity claim, but does not address Quality Egg's ripeness arguments as to the contribution and apportionment claims. (ECF 144 at 3-5.) Citing the state Supreme Court case of *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1197-98 (Cal. 1988), Hillandale asserts a defendant may pursue an equitable indemnity claim either by filing a cross-complaint or by filing a separate indemnity action after it has paid damages for which another is responsible. (*Id.*)

1   The parties' cited cases appear to contradict one another.  A defendant could

2   never plead an equitable indemnity claim in a cross-complaint if that claim did not exist until the

3   underlying action had reached a final judgment.  *See, e.g.*, *E.L. White, Inc. v. City of Huntington*

4   *Beach*, 21 Cal. 3d 497, 506 (Cal. 1978) ("It is well settled that a cause of action for implied

5   indemnity does not accrue or come into existence until the indemnitee has suffered actual loss

6   through payment.").  However, the court in *E.L. White*, on which *Major Client* relies, was

7   considering whether an equitable indemnity claim was barred by the statute of limitations when

8   it made the statement about when such claims come into existence.  21 Cal. 3d at 506.  For the

9   purposes of equitable tolling, then, an equitable indemnity claim does not "exist" until a party

10  has paid damages for which another is responsible.  The equitable indemnity claim in *Major*

11  *Client* could not lie because there was no concurrent liability among defendants, 67 Cal. App.

12  4th at 1131, not because it was prematurely pled.  The other cases Quality Egg cites for its

13  ripeness proposition also rely upon *E.L. White, supra,* and other cases that discuss this remedy's

14  existence in the context of the statute of limitations.  *See, e.g.*, *Christian v. County of Los*

15  *Angeles*, 176 Cal. App. 3d 466, 471 (Cal. Ct. App. 1986) (citing *E.L. White* and *People ex.rel.*

16  *Dep't of Transp. v. Superior Court*, 26 Cal. 3d 744, 759 (Cal. 1980)).  *Department of*

17  *Transportation* makes clear that *E.L. White* relates to the statute of limitations.  26 Cal.3d at 751.

18  Taken together, *Department of Transportation* and *Evangelatos*, both California Supreme Court

19  cases, suggest equitable indemnity claims may be pled in a cross-complaint before any defendant

20  has been found liable. Hence, the weight of California Supreme Court case law comports with a

21  common sense understanding of the nature and function of cross-complaints and indemnity.

22  The court thus finds that Hillandale's equitable indemnity, contribution, and

23  apportionment claims are not barred for ripeness.  Although in its opposition Hillandale does not

24  address ripeness as to its contribution and apportionment claims, Quality Egg has cited no cases

25  specific to these two defenses.  Quality Egg simply lumped these two claims together with

26  equitable indemnity.  As the equitable indemnity claim may proceed on ripeness, the court also

will allow the other two claims to proceed.  California courts in fact countenance cross-complaints containing such claims when the underlying action is still pending.  *See, e.g.*, *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 14 Cal. Rptr. 2d 673, 674-75 (Cal. Ct. App. 1992) (finding no fault with the state court entertaining a cross-complaint containing equitable indemnity and contribution claims and a request for declaratory judgment of fault).

        2.        Duplication

        Hillandale's equitable indemnity and contribution claims are not duplicative of each other.  Each serves a different function.  As previously mentioned, the trial court that heard the underlying action on appeal in *Coca-Cola Bottling Co.*, 14 Cal. Rptr. 2d at 674-75, allowed a cross-complaint containing both claims to proceed.  The appeals court there, finding no fault with the trial court, spoke to the distinction between equitable indemnity and contribution, noting that the former distributes the entire loss upon one or more tortfeasors according to fault while the latter, a creature of statute, distributes the loss equally among all tortfeasors.  *Id.* at 676.  However, the court also noted that the two claims are mutually exclusive: "Where a right of indemnity exists there can be no contribution."  *Id.* at 677.  This does not bar Hillandale's claims; it may plead in the alternative.  Fed. R. Civ. P. 8(d)(3).

        Hillandale's apportionment claim is duplicative of its equitable indemnity claim, however.  Apportionment is a doctrine relating to the distribution of liability among joint tortfeasors.  5 Bernard. E. Witkin, Summary of California Law § 51, at 118 (10th ed. 2005).  As such, it is subsumed into equitable indemnity, which determines the relative fault of each tortfeasor and then additionally requires each to pay in that proportion, *Coca-Cola Bottling Co.*, 14 Cal. Rptr. 2d at 674-75.  Hillandale cites no cases in its opposition suggesting there is a distinction between the two, or even that apportionment is a claim at all, rather than just a doctrine.  For these reasons, Hillandale's apportionment claim is dismissed.

        Accordingly, Hillandale's equitable indemnity and contribution claims may proceed, while its apportionment claim is dismissed.

3.      Premised Upon Non-Tortious Conduct

Quality Egg avers Hillandale may base its equitable indemnity claim only on underlying tort liability.  (ECF 125 at 7.)  Inasmuch as Hillandale seeks equitable indemnification from Quality Egg, it can only receive indemnification based upon shared fault for the tortious conduct, not for breach of contract remedies such as implied warranties.  (*Id.*)  Hillandale counters that equitable indemnification can also extend to contractual remedies. (ECF 144 at 7.)  Quality Egg does not address this argument in its reply.

Hillandale may seek equitable indemnity on both tort and contract claims. Implied contractual indemnity is a cognizable type of equitable indemnity allowing recovery for failure to perform.  WITKIN, *supra,* SUMMARY OF CALIFORNIA LAW § 118, at 220; *Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1032 (Cal. 1990).

Therefore, if Hillandale is found liable in the underlying action, it may seek appropriate loss-sharing relief from Quality Egg through equitable indemnity and, in the alternative, through contribution.

B.      Implied Warranties

Quality Egg argues Hillandale does not allege the necessary elements of an implied warranty of fitness claim.  (ECF 125 at 8-9.)  Hillandale does not counter this argument in its opposition.  Instead, recognizing plaintiff NuCal makes the same implied warranty claim against all defendants in the underlying action, based upon nearly identical alleged facts, Hillandale urges this court to allow its implied warranty of fitness claim to proceed only if it allows plaintiff's to proceed. (ECF 144 at 2 n.1.)  The court dismisses Hillandale's implied warranty of fitness claim for the same reason it dismisses plaintiff's, as described below.

The warranty of fitness for a particular purpose is implied by law when "a seller has reason to know that a buyer wishes goods for a particular purpose and is relying on the seller's skill and judgment to furnish those goods." *Martinez v. Matabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 189 (Cal. Ct. App. 2003).  This warranty is breached when the goods are not

1    reasonably fit for the intended purpose, causing injury.  *Id.*  The crux of the issue here is whether

2    Hillandale purchased eggs from Quality Egg for a "particular purpose" such that it relied on

3    Quality Egg's skill.  Comment 2 to the relevant California statutory provision states:

> A "particular purpose" differs from the ordinary purpose for which
> the goods are used in that it envisages a specific use by the buyer
> which is peculiar to the nature of his business whereas the ordinary
> purposes for which goods are used are those envisaged in the
> concept of merchantability and go to uses which are customarily
> made of the goods in question. For example, shoes are generally
> used for the purpose of walking upon ordinary ground, but a seller
> may know that a particular pair was selected to be used for
> climbing mountains.

9    CAL. COMM. CODE § 2315.  This comment also instructs that a contract may include an implied

10   warranty both of merchantability and of fitness for a particular purpose.  *Id.*

11               Quality Egg's implied warranty of fitness claim is inadequately pled.  Eggs such

12   as those at issue here are ordinarily used for human consumption, whether as a processed and

13   pasteurized liquid or as unbroken shell eggs.  Quality Egg does not allege, nor could the court

14   accept, that buying eggs to be repackaged and sold to consumers as unbroken shell eggs is

15   "peculiar to the nature" of its business.  *See, e.g.*, *Mathison v. Bumbo*, No. SA CV08–0369 DOC

16   (Anx), 2008 WL 8797937, at *11 (C.D. Cal. Aug. 18, 2008) ("There is nothing peculiar about

17   using a baby seat to secure infants and toddlers." (internal quotations omitted)).  Rather, the

18   ordinary purpose of such eggs repackaged for resale is envisaged in the concept of general

19   merchantability.  Thus, Quality Egg's implied warranty of fitness claim is dismissed.

20          C.      Leave to Amend

21               Courts should consider four factors when considering leave to amend: 1) undue

22   delay; 2) bad faith; 3) futility of amendment; and 4) prejudice to the opposing party.  *Levine v.*

23   *Safeguard Health Enterprises, Inc.*, 32 F. App'x 276, 278 (9th Cir. 2002) (internal citations and

24   quotations omitted).  In this order, the court dismisses Hillandale's apportionment claim and its

25   implied warranty of fitness claim.

26   /////

1    This case has been pending for more than two years, but there is no indication the

2    parties have shown bad faith.  Moreover, Quality Egg would not be unduly prejudiced if

3    Hillandale were given leave to amend.  However, the court finds the third futility factor weighs

4    most heavily here: given the court's reasons for dismissing each of these claims, set forth above,

5    amendment would be futile.  No amount of additional pleading could resurrect Hillandale's

6    apportionment claim, which, even if it were viable, would be duplicative.  There also are no facts

7    Hillandale could plead that would satisfy the relevant legal standard for implied warranty of

8    fitness.  The court denies leave to amend these claims.

9    III.   CONCLUSION

10    For the foregoing reasons, Quality Egg's motion to dismiss is DENIED in part and

11    GRANTED in part, as follows:

12        1.    Hillandale's apportionment claim (claim V) is dismissed with prejudice; and

13        2.    Hillandale's implied warranty of fitness claim (claim III) is dismissed with

14             prejudice.

15    The court further ORDERS that:

16        1.    Hillandale file amended pleadings consistent with this order by February 15,

17             2013; and

18        2.    The status conference set for February 21, 2013 is vacated and reset for

19             March 7, 2013.

20    IT IS SO ORDERED.

21    DATED:  January 14, 2013.

23                                     _____
                                     UNITED STATES DISTRICT JUDGE