**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JEFFREY G. BAIREY, SB# 111271
ALISON YEW, SB# 173158
One Sansome Street, Suite 1400
San Francisco, California  94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882
bairey@lbbslaw.com
yew@lbbslaw.com

**FAEGRE BAKER DANIELS LLP**
SARAH L. BREW, admitted *pro hac vice*
STEVEN B. TOENISKOETTER, SB# 248115
KRISTIN R. EADS, admitted *pro hac vice*
90 South Seventh Street, Suite 2200
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
sarah.brew@FaegreBD.com
steve.toeniskoetter@FaegreBD.com
kristin.eads@FaegreBD.com

Attorneys for the Hillandale Defendant

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| NUCAL FOODS, INC., a California cooperative,<br><br>Plaintiff,<br><br>v.<br><br>QUALITY EGG LLC, an Iowa Limited Liability Company; HILLANDALE FARMS OF IOWA, INC., an Iowa corporation; HILLANDALE IOWA LLC, an Iowa limited liability company; HILLANDALE FARMS OF PA, INC., a Pennsylvania corporation;,<br><br>Defendants. | CASE NO. 2:10-cv-03105-KJM-CKD<br><br>**ANSWER OF DEFENDANTS HILLANDALE FARMS OF IOWA, INC., HILLANDALE IOWA LLC, AND HILLANDALE FARMS OF PA, INC. TO SECOND AMENDED COMPLAINT AND AMENDED CROSSCLAIM AGAINST DEFENDANT QUALITY EGG LLC**<br><br>ACTION FILED:   November 18, 2010<br>TRIAL DATE:      May 13, 2013 |

## ANSWER

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants
HILLANDALE FARMS OF IOWA, INC. (hereinafter, "Hillandale Farms"),

HILLANDALE IOWA LLC (hereinafter "Hillandale Iowa"), and HILLANDALE FARMS OF PA, INC. (hereinafter "Hillandale PA") (collectively "the Hillandale Defendants") answer the unverified Second Amended Complaint ("Complaint") of Plaintiff NUCAL FOODS, INC. (hereinafter, "NuCal" or "Plaintiff"), and hereby assert the following admissions and denials to each and every allegation contained in the unverified Second Amended Complaint, and to the whole thereof, as follows:

## SUMMARY OF CASE

1.     Admitted that Quality Egg LLC and Hillandale Farms of Iowa, Inc. each initiated separate recalls of certain shell eggs in August 2010 and that the recall was the result of allegations of an outbreak or outbreaks of Salmonella Enteritidis (SE).  The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 1.

2.     Admitted that the quoted statement appears on CDC's website.  CDC's website speaks for itself.  Otherwise denied.

3.     The Hillandale Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 3, and therefore deny the same.

4.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Admitted that Hillandale Farms employee Duane Mangskau testified before Congress in September 2010.  That testimony is a matter of public record and therefore speaks for itself.  Otherwise denied.

5.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

6.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Admitted that the referenced documents contain test results for *Salmonella Enteritidis* in certain houses of the referenced Layers.  Those documents and test results speak for themselves.  The Hillandale Defendants deny they were aware of such test results prior to August 2010.  The Hillandale Defendants deny they hired the referenced veterinary team.  Otherwise denied.

7.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Expressly denied that any of the Hillandale Defendants knew or learned that chicken carcasses at any Quality Egg or Hillandale locations had tested positive for SE as of June 2010.  The Hillandale Defendants deny Drs. Trampel and Frana were their "veterinary specialists." With respect to Dr. Trampel's alleged admission, the document speaks for itself.  Otherwise denied.

8.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Expressly denied that they ever owned, operated, or had anything to do with the "pullet farms" identified by Plaintiff.  The referenced test results speak for themselves.  The Hillandale Defendants

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

deny they knew of such test results prior to August 2010.  Otherwise denied.

9.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny they knew of such test results prior to August 2010.  Denied in all other respects.

10.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny they knew of such test results prior to August 2010.  Denied in all other respects.

11.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Admitted that Salmonella Heidelberg has in the past been reportedly linked by government agencies to outbreaks in eggs and other products.  The referenced test results speak for themselves. The Hillandale Defendants each deny Tony Wasmund was their agent.   Otherwise denied.

12.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

13. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they had knowledge of any environmental samples testing positive at Layers 1 to 6, West Union (Layer 9), or any of Quality Egg's pullet farms prior to July 9, 2010. FDA's Final Rule, Prevention of Salmonella Enteritidis in Shell Eggs During Production, Storage, and Transportation (the so-called "FDA egg rule"), is a matter of public record and speaks for itself. The Hillandale Defendants deny NuCal's characterization of the FDA egg rule is complete or accurate. Otherwise denied.

14. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied that any of the Hillandale Defendants had a duty to notify purchasers of its eggs of positive environmental tests for SE, of which the Hillandale Defendants were not aware. Otherwise denied.

15. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

16. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Denied that any of the referenced test results relate to eggs from any egg facility owned or operated by any of the Hillandale Defendants.   Those test result documents speak for themselves. Otherwise denied.

17.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.   To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Admitted that Hillandale Farms representatives Duane Mangskau and Orland Bethel testified before the U.S. House of Representatives Committee on Energy and Commerce on September 22, 2010.   The Hillandale Defendants admit representatives of Quality Egg separately appeared and testified that day.  Otherwise denied.

18.   The Hillandale Defendants admit Orland Bethel invoked his rights under the Fifth Amendment of the U.S. Constitution before a Congressional panel on September 22, 2010.   The Hillandale Defendants also admit that Hillandale Farms employee Duane Mangskau testified before a Congressional panel on September 22, 2010 and asserts Mr. Mangskau's testimony is a matter of public record and speaks for itself.   The Hillandale Defendants deny that the allegations contained in Paragraph 18 accurately and comprehensively restate the terms of said testimony and deny all allegations contained in Paragraph 18 that are inconsistent therewith.   The Hillandale Defendants admit Mr. Mangskau was present when a third party collected environmental samples from the West Union farm in April 2010, but deny Mr. Mangskau collected any of the samples himself or had knowledge of the results of those samples at any time prior to August 2010.

19.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are

not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: On information and belief, the Hillandale Defendants admit that Ohio Fresh Eggs LLC initiated a recall of shell eggs in November 2010.  On information and belief, the Hillandale Defendants deny the remaining allegations of Paragraph 19, to the extent they are directed at any Hillandale Defendant.

20.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

21.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Admitted that NuCal obtained shell eggs from Hillandale Farms of Iowa, Inc. on several occasions in May 2010 and July 2010.  On information and belief, the Hillandale Defendants deny those eggs were "tainted".  The Hillandale Defendants admit that Plaintiff purports to bring an action for indemnification and recovery of its alleged losses and damages, restitution, and for punitive damages, but deny that each of them is liable for any harm or damages claimed by Plaintiff.  The Hillandale Defendants deny all remaining allegations of Paragraph 21, to the extent they are directed at any Hillandale Defendant.

## JURISDICTION AND VENUE

22.   Paragraph 22 contains legal contentions relating to jurisdiction and amount in controversy to which the Hillandale Defendants are not required to respond.  To the extent the Hillandale Defendants may be required to respond, the Hillandale Defendants

do not contest federal jurisdiction.

23.    Paragraph 23 contains legal contentions relating to venue to which the Hillandale Defendants are not required to respond.   To the extent the Hillandale Defendants may be required to respond, the Hillandale Defendants deny that "a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred in this District," further deny that "a substantial part of the property that is the subject of the action is in this District," and reserves the right to bring any appropriate motions related to venue.

### THE PARTIES

24.    The Hillandale Defendants lack knowledge or information sufficient to admit or deny the allegations contained in Paragraph 24 and, therefore, deny the same.

25.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.   To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny they were involved in the operation of the farms identified as Layers 1, 2, 3, 4 and 6.   Hillandale Farms and Hillandale Iowa admit they were involved in the operation of the USDA-inspected egg grading and packing facility at the Alden Farm (Layer 5), but deny they was involved in the operation of the egg production layer houses at the Alden Farm (Layer 5).   Hillandale Farms and Hillandale Iowa further admit they were involved in the operation of the West Union, Iowa egg facility (Layer 9), but deny the West Union location has any relevance to this matter.   Hillandale PA denies it was involved in any manner with the operation of any of the farms identified in this paragraph.   The Hillandale Defendants deny they were "linked to" the Minnesota chicken-raising operation that sold chicks to Quality Egg-operated egg barns in 2009 and 2010.   Otherwise denied.

### A.    The DeCoster Defendants

8

26.     The Hillandale Defendants deny that Hillandale Farms of Iowa, Inc. jointly operated Layers 5 and 9 with Quality Egg.  The remaining allegations contained in paragraph 26 are not directed at the Hillandale Defendants and therefore no response is required.

27.     The allegations contained in paragraph 27 are not directed at the Hillandale Defendants and therefore no response is required.

28.     The allegations contained in paragraph 28 are not directed at the Hillandale Defendants and therefore no response is required.

29.     The allegations contained in paragraph 29 are not directed at the Hillandale Defendants and therefore no response is required.

30.     The allegations contained in paragraph 30 are not directed at the Hillandale Defendants and therefore no response is required.

31.     The allegations contained in paragraph 31 are not directed at the Hillandale Defendants and therefore no response is required.

32.     The allegations contained in paragraph 32 are not directed at the Hillandale Defendants and therefore no response is required.

33.     The allegations contained in paragraph 33 are not directed at the Hillandale Defendants and therefore no response is required.

34.     The allegations contained in paragraph 34 are not directed at the Hillandale Defendants and therefore no response is required.

**B.     The Hillandale Defendants**

35.     The Hillandale Defendants admit Hillandale Farms is an Iowa corporation with its principal place of business in Iowa, but deny that Hillandale Farms' principal place of business is at 19 ½ West Main Street, New Hampton, Iowa.  The Hillandale Defendants admit that during the relevant time period Hillandale Farms was in the business of selling shell eggs to customers nationally, but deny Hillandale Farms was in the business of "manufacturing" shell eggs.  The Hillandale Defendants admit Hillandale Farms is owned by Orland Bethel, Gary Bethel, and Gary Bartness.  The Hillandale

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Defendants deny Hillandale Farms leased the Alden, Iowa (Layer 5) egg facility from Quality Egg.  The Hillandale Defendants deny Hillandale Farms jointly operated the Alden, Iowa (Layer 5) egg facility with Quality Egg.  The Hillandale Defendants admit Hillandale Farms marketed and sold eggs produced at the Alden, Iowa egg production facility during the relevant time period.  Otherwise denied.

36.     The document (Exhibit 10) referenced by Plaintiff speaks for itself. Otherwise denied.

37.     The Hillandale Defendants admit the first sentence of this paragraph.  The Hillandale Defendants admit Orland Bethel is an owner of Hillandale PA but deny he is the sole owner.  The Hillandale Defendants deny all remaining allegations of paragraph 37.

38.     The Hillandale Defendants admit the first sentence of this paragraph.  The Hillandale Defendants deny that Hillandale PA sold the referenced eggs to NuCal.  The Hillandale Defendants deny all remaining allegations of paragraph 38.

39.     Denied.

## RELATED ENTITIES

40.     The allegations contained in paragraph 40 are not directed at the Hillandale Defendants and therefore no response is required.

41.     The allegations contained in paragraph 41 are not directed at the Hillandale Defendants and therefore no response is required.

42.     The allegations contained in paragraph 42 are not directed at the Hillandale Defendants and therefore no response is required.

43.     The Hillandale Defendants admit that during the relevant time period, Hillandale Iowa II, LLP was an Iowa limited liability partnership with its principal place of business at 13706 230th Street, West Union, Iowa.  The Hillandale Defendants further admit that during the relevant time period, Hillandale Iowa II, LLP produced eggs at the West Union facility (Layer 9).  The Hillandale Defendants admit that during the relevant time period, Hillandale Iowa LLC owned 10% of Hillandale Iowa II, LLP.  The

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Hillandale Defendants deny all remaining allegations of Paragraph 43.

44.     On information and belief, admitted.

45.     Denied.

46.     The Hillandale Defendants are without knowledge or information with respect to NuCal's investigation and therefore deny the same.  The Hillandale Defendants deny any of the Hillandale Defendants supplied any eggs to NuCal that came from the West Union egg facility during the relevant time period.

47.     On information and belief, admitted.

48.     To the extent this paragraph is intended to indicate Mr. Glessner was a manager for any of the Hillandale Defendants, that allegation is denied.  The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 48.

## GENERAL ALLEGATIONS

49.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Denied that any of the Hillandale Defendants was involved with the actions described in paragraph 49.  On information and belief, the Hillandale Defendants admit Quality Egg personnel directed or participated in the collection of environmental samples from Layers 1, 2, 3, 4, and 5 in January 2010, which samples were identified as coming from DeCoster Farms of Iowa or DeCoster Farms.  The Hillandale Defendants are without information or knowledge with respect to the remaining allegations and therefore deny the same.

50.     On information and belief, the Hillandale Defendants admit that the ISU VDL issued an initial report on February 15, 2010.  The content of that report speaks for itself.  Otherwise denied.

51.     To the extent the allegations in this paragraph use the collective term

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

"defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: On information and belief, the Hillandale Defendants admit that the ISU VDL issued a report on or around March 4, 2010.  The Hillandale Defendants deny that Tony Wasmund was a manager for any of the Hillandale Defendants.  The content of that report speaks for itself.  On information and belief, the Hillandale Defendants admit that Dr. Timothy Frana emailed Quality Egg employee Tony Wasmund around that time.  The content of the referenced email speaks for itself.  Otherwise denied.

52.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

53.   The Hillandale Defendants admit Quality Egg directed collection and testing of certain environmental samples from Layers 1, 2, 3, 4, 5, 6 and 9, some results of which are attached to Plaintiff's Second Amended Complaint.  The test result documents speak for themselves.  To the extent any of the remaining allegations in this paragraph are directed at the Hillandale Defendants, such allegations are denied.

54.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: Denied that any of the Hillandale Defendants owned or operated the referenced pullet farms or submitted any samples from such farms.  The Hillandale Defendants admit, on information and belief, that Quality Egg representatives submitted environmental samples from pullet

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

farms owned, operated, or associated with Quality Egg.  On information and belief, the Hillandale Defendants admit some of those samples came back positive for SE.  The test result documents speak for themselves.  To the extent any of the remaining allegations are directed at the Hillandale Defendants, such allegations are denied.

55.     To the extent the allegations in this paragraph are intended to refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: admitted, on information and belief, that Quality Egg directed collection and testing of certain environmental samples from its pullet farms, some results of which are attached to Plaintiff's Second Amended Complaint.  The test result documents speak for themselves. To the extent any of the remaining allegations are directed at the Hillandale Defendants, such allegations are denied.

56.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they were notified of the test results referenced in Quality Egg's Second Amended Complaint, Paragraphs 49 to 55, at any time prior to August 2010.  To the extent any of the remaining allegations within Paragraph 56 are directed at the Hillandale Defendants, denied.

57.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit the quoted text appears in the referenced document, which document speaks for itself.  Otherwise denied.

58.     To the extent the allegations in this paragraph use the collective term

"defendant farms" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they purchased any chickens from Midwest Hatchery during the relevant time period, and further deny they had knowledge of any reports that "Midwest Hatchery was contaminated with Salmonella."  To the extent any of the other allegations within Paragraph 58 are directed at the Hillandale Defendants, denied.

59.    The allegations contained in paragraph 59 are not directed at the Hillandale Defendants and therefore no response is required.

60.    The allegations contained in paragraph 60 are not directed at the Hillandale Defendants and therefore no response is required.

61.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they owned or operated the pullet farms referenced during the relevant time period.  The referenced test results speak for themselves.  Otherwise denied.

62.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they owned or operated Layer 1.  The referenced document speaks for itself.  Otherwise denied.

63.    The allegations contained in paragraph 63 are not directed at the Hillandale Defendants and therefore no response is required.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

64.     The allegations contained in paragraph 64 are not directed at the Hillandale Defendants and therefore no response is required.

65.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they knew about any alleged "widespread Salmonella Heidelberg contamination at Midwest Hatcheries."  The referenced documents speak for themselves. Otherwise denied.

66.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

67.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they owned or operated Layer 6.  The Hillandale Defendants further deny they submitted dead chickens from Layer 6 for testing.  The referenced documents speak for themselves. The Hillandale Defendants deny they had knowledge of such test results prior to August 2010.  To the extent any other allegations in this paragraph are directed at the Hillandale Defendants, denied.

68.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: Dr. Trampel's email speaks for itself.  Otherwise denied.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

69.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: On information and belief, the Hillandale Defendants admit Dr. Trampel emailed Tony Wasmund on May 11, 2010 regarding test results for Layers 3, 5 (Alden) and 6.   Those communications and the associated test result reports speak for themselves.  Otherwise denied.

70.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit that NSVL released test results for samples from internal organs of certain chickens from Layers 3, 5 (Alden) and 6 on or around the indicated dates.   The test results and the associated reports speak for themselves.  The Hillandale Defendants deny they had knowledge of such test results prior to August 2010.  Otherwise denied.

71.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they had knowledge of alleged SE contamination of eggs or farms. Otherwise denied.

72.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: The referenced document speaks for itself.  The Hillandale Defendants lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 72, and on that basis deny the same.

73.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answers as follows: The referenced document speaks for itself.  The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 73, and on that basis deny the same.

74.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answers as follows: The referenced document

speaks for itself.  The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 74, and on that basis deny the same.

75.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

76.     To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 76, and on that basis deny the same.

77.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

78.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit NuCal purchased certain shell eggs from Hillandale Farms of Iowa, Inc. during the time period May 2010 to July 2010.  The Hillandale Defendants lack knowledge or information sufficient to admit or deny the reason for said purchases, and therefore deny the same.  The Hillandale Defendants deny NuCal purchased any shell eggs from Hillandale Iowa LLC or Hillandale Farms of PA, Inc.  Otherwise, denied.

79.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit NuCal purchased eggs from Hillandale Farms of Iowa, Inc. during the relevant time period through ECI, but deny Hillandale Farms of PA or Hillandale Iowa LLC sold any eggs to NuCal.  The Hillandale Defendants admit Hillandale Farms of Iowa, Inc. shipped the eggs to one or more of NuCal's facilities.  Otherwise, denied.

80.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit that Hillandale Farms of PA, Inc. is listed on certain invoices for NuCal's purchases of eggs from ECI, but deny Hillandale Farms of PA, Inc. sold any such eggs to NuCal.  The Hillandale Defendants admit Hillandale Iowa LLC processed, and Hillandale Farms of Iowa, Inc. shipped, eggs to NuCal that were laid in the Alden, Iowa egg production facility, but deny any of the Hillandale Defendants owned or operated the Alden, Iowa egg production facility.  The Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. announced a recall under its name in August 2010.  Otherwise denied.

81.   The allegations contained in paragraph 81 are not directed at the Hillandale Defendants and therefore no response is required.

82.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants specifically deny they knew about the referenced test results.  The Hillandale

Defendants further deny that Hillandale Farms of PA, Inc. sold any such eggs to NuCal. The Hillandale Defendants deny all remaining allegations of this paragraph directed at the Hillandale Defendants.

83.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit NuCal purchased additional certain lots of eggs from Hillandale Farms of Iowa, Inc. in July 2010.  The Hillandale Defendants specifically deny they knew about the referenced test results and further deny all remaining allegations of this paragraph directed at the Hillandale Defendants.

84.     The Hillandale Defendants admit ECI invoices in May and June 2010 included a note regarding the so-called "FDA egg rule."  The Hillandale Defendants admit the existence of the so-called "FDA egg rule", but deny NuCal's characterization of the rule is complete and accurate.  Otherwise denied.

85.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants admit they knew the FDA egg rule would go into effect on July 9, 2010.  The Hillandale Defendants deny they had knowledge of environmental SE-positive test results before July 9, 2010.  Otherwise denied.

86.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit the FDA egg safety rule took effect on July 9, 2010.  The Hillandale Defendants deny knowledge of environmental or other tests allegedly showing "continuing SE contamination at the defendants' laying farms and pullet farms", including the referenced documents.  Those test results speak for themselves.  Otherwise denied.

87.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

88.    On information and belief, the Hillandale Defendants admit that on or around July 9, 2010, ECI began including the quoted language, among other language, on egg purchase confirmations.  Otherwise denied.

89.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny any knowledge of any test results showing eggs or farms allegedly contaminated with SE prior to mid-August 2010.  The Hillandale Defendants admit they did not notify NuCal or ECI of alleged positive test results, which results they did not know about, between July 9, 2010 and mid-August 2010.  Otherwise denied.

90.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

91.   The Hillandale Defendants admit Hillandale Farms of Iowa, Inc., sold and shipped approximately 148,485 dozens of shell eggs to NuCal between May 2010 and July 2010.  The Hillandale Defendants admit Hillandale Farms of Iowa, Inc. shipped the total number of shell eggs identified but deny the ship dates identified are accurate.  Otherwise denied.

92.   The Hillandale Defendants deny the practice identified by NuCal is the "usual practice in the industry."   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 92, and therefore deny the same.

93.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they owned or operated the pullet farms referenced and further deny they had knowledge of any SE positive test results in early August 2010.  The referenced documents speak for themselves.  Otherwise denied.

94.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit they did not notify NuCal, regulators or the public of the referenced test results prior to mid-August 2010, but deny they had any knowledge of the referenced tests prior to that time.

95.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the

extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they had knowledge of the alleged "widespread SE contamination" on August 9, 2010.  The remaining allegations contained in paragraph 95 are not directed at the Hillandale Defendants and therefore no response is required.

96.     The allegations contained in paragraph 96 are not directed at the Hillandale Defendants and therefore no response is required.

97.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny John Glessner was acting as an agent for the Hillandale Defendants. The remaining allegations contained in paragraph 97 are not directed at the Hillandale Defendants and therefore no response is required.

98.     To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit FDA sought documents relating to SE tests in August 2010, and on information and belief, admit that representatives of Quality Egg provided such documents.  Otherwise denied.  The remaining allegations contained in paragraph 98 are not directed at the Hillandale Defendants and therefore no response is required.

99.     The Hillandale Defendants admit Hillandale Farms of Iowa, Inc. issued a voluntary recall on August 20, 2010.  The Hillandale Defendants further admit Hillandale Farms of Iowa, Inc.'s recall notice did not mention Hillandale Farms of PA, Inc. Otherwise denied.

100.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.   To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: On information and belief, the Hillandale Defendants admit NuCal announced its own voluntary recalls on August 17, 2010 and August 20, 2010.   The Hillandale Defendants deny NuCal suffered any damages as a result of any actions taken by the Hillandale Defendants.   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 100, and therefore demand strict proof from Plaintiff thereof.

101.   The Hillandale Defendants deny NuCal faces any potential lawsuits as a result of any actions taken by the Hillandale Defendants.   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 101, and therefore demand strict proof from Plaintiff thereof.

102.   The Hillandale Defendants deny NuCal incurred any internal costs as a result of any actions taken by the Hillandale Defendants.   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 102, and therefore demand strict proof from Plaintiff thereof.

103.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.   To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny NuCal lost any profits as a result of any actions taken by the Hillandale Defendants.   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 103, and therefore demand strict proof from Plaintiff thereof.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

104.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny NuCal faces a loss of business as a result of any actions taken by the Hillandale Defendants.   The Hillandale Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph 104, and therefore demand strict proof from Plaintiff thereof.

105.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

106.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. has tested some batches of eggs for SE since August 20, 2010.  Otherwise denied.

107.    To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the results of the referenced tests speak for themselves.  Otherwise denied.

108.    To the extent the allegations in this paragraph use the collective term

"defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they submitted the referenced test results or that the test results came from eggs they produced.  Otherwise, denied.

109.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: On information and belief, the Hillandale Defendants admit FDA sought access to test results in August 2010. The Hillandale Defendants deny they "refused, at least initially, to give federal regulators access to scores of samples taken before July 9, 2010" and further deny they had possession of such sample results prior to mid-August 2010.  Otherwise denied.

110.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

111.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

112.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the

extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. representatives Orland Bethel and Duane Mangskau testified before the House Committee on Energy and Commerce, Subcommittee on Oversight and Investigations on September 22, 2010.   Otherwise denied.

113.   The allegations contained in paragraph 113 are not directed at the Hillandale Defendants and therefore no response is required.

114.   The allegations contained in paragraph 114 are not directed at the Hillandale Defendants and therefore no response is required.

115.   The allegations contained in paragraph 115 are not directed at the Hillandale Defendants and therefore no response is required.

116.   The Hillandale Defendants admit Orland Bethel invoked his rights under the Fifth Amendment to the Constitution at the September 22, 2010 hearing.

117.   The Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. representative Duane Mangskau testified that Hillandale "has no ownership interest" at the Alden Farm, and that Hillandale Farms of Iowa, Inc. had "terminated our marketing relationship with" Wright County Egg "because we were disappointed with the test results there", but deny this paragraph fully and accurately states the content of his testimony to the House Committee on Energy and Commerce, Subcommittee on Oversight and Investigations.  Otherwise denied.

118.   The Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. representative Duane Mangskau testified that, "In fact, to the best of my knowledge, Hillandale Farms had never been involved in a recall—until three weeks ago—when the FDA told us that 7 people had become ill from Salmonella at a Mexican restaurant that received Hillandale Iowa eggs.  There are many other potential sources of Salmonella contamination in restaurants, and we were, to be honest, shocked by the allegation."  The Hillandale Defendants deny that this paragraph fully and accurately states the content of

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

his testimony to the House Committee on Energy and Commerce, Subcommittee on Oversight and Investigations.  Otherwise denied.

119.   The Hillandale Defendants deny Mr. Mangskau knew that in May 2010 bird carcasses were being tested for SE at several Iowa farms, including the Alden Farm, in response to high mortality at the farms.   The Hillandale Defendants deny Mr. Mangskau had any active role in an effort in July 2010 to vaccinate "the birds" against SE, or that he had any knowledge of any alleged problems with SE at the Alden, Iowa or West Union, Iowa egg production facilities.  Otherwise denied.

120.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

121.   The allegations contained in paragraph 121 are not directed at the Hillandale Defendants and therefore no response is required.

122.   The allegations contained in paragraph 122 are not directed at the Hillandale Defendants and therefore no response is required.

123.   The allegations contained in paragraph 123 are not directed at the Hillandale Defendants and therefore no response is required.

124.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

125.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the

Hillandale Defendants, the Hillandale Defendants answer as follows: The referenced test result documents speak for themselves.  Otherwise denied.

126.   To the extent the allegations in this paragraph are directed at the Hillandale Defendants, the Hillandale Defendants answer as follows: The referenced test result documents speak for themselves.  Otherwise denied.

127.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny they purchased any hens from Midwest Poultry during the identified time period.   The remaining allegations of paragraph 127 are not directed at the Hillandale Defendants and therefore no response is required.

128.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

**FIRST CLAIM FOR RELIEF**

**(Breach of Implied Warranty of Merchantability)**

129.   The Hillandale Defendants incorporate by reference their Answers to Paragraphs 1 through 128, as though fully set forth herein.

130.   Hillandale Farms and Hillandale Iowa answer as follows: The allegations contained in paragraph 130 are not directed at Hillandale Farms or Hillandale Iowa and therefore no response is required.   Hillandale PA answers as follows: this paragraph states legal conclusions to which no response is required. To the extent a response is required, denied.

131.   Hillandale Farms and Hillandale Iowa answer as follows: The allegations

28

contained in paragraph 131 are not directed at Hillandale Farms or Hillandale Iowa and therefore no response is required.  Hillandale PA answers as follows: Hillandale PA denies that it sold any eggs to NuCal.  Denied in all other respects.

132.   Hillandale Farms and Hillandale Iowa answer as follows: The allegations contained in paragraph 132 are not directed at Hillandale Farms or Hillandale Iowa and therefore no response is required.  Hillandale PA answers as follows: Hillandale PA denies that it sold any eggs to NuCal.  Denied in all other respects.

133.   Hillandale Farms and Hillandale Iowa answer as follows: The allegations contained in paragraph 133 are not directed at Hillandale Farms or Hillandale Iowa and therefore no response is required.  Hillandale PA answers as follows: Hillandale PA denies that it sold any eggs to NuCal.  Denied in all other respects.

134.   Hillandale Farms and Hillandale Iowa answer as follows: The allegations contained in paragraph 134 are not directed at Hillandale Farms or Hillandale Iowa and therefore no response is required.  Hillandale PA answers as follows: Hillandale PA denies that it sold any eggs to NuCal.  Denied in all other respects.

## SECOND CLAIM FOR RELIEF

### (Fraud)

135.   The Hillandale Defendants incorporate by reference their Answers to Paragraphs 1 through 128, as though fully set forth herein.

136.   The allegations contained in paragraph 136 are not directed at Hillandale and therefore no response is required.

137.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

138.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are

not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit Hillandale Iowa LLC was in the business of processing, and Hillandale Farms of Iowa, Inc. was in the business of selling, shell eggs for human consumption. The Hillandale Defendants deny that Hillandale PA produced, processed, or sold any shell eggs to NuCal.  Otherwise denied.

139.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

140.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants admit Hillandale Farms of Iowa, Inc. sold shell eggs to NuCal.  The Hillandale Defendants deny Hillandale Iowa LLC or Hillandale Farms of PA, Inc. sold any shell eggs to NuCal.  Denied in all other respects.

141.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny Hillandale Iowa LLC or Hillandale Farms of PA, Inc. sold any shell eggs to NuCal.  Denied in all other respects.

142.   To the extent the allegations in this paragraph use the collective term

"defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny NuCal purchased any shell eggs from Hillandale Iowa LLC or Hillandale Farms of PA, Inc. Denied in all other respects.

143. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

144. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny Hillandale PA sold any eggs to NuCal. Denied in all other respects.

145. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: The Hillandale Defendants deny Hillandale PA sold any eggs to NuCal. Denied in all other respects.

146. The Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by the Hillandale Defendants. Otherwise denied.

147. To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required. To the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

## THIRD CLAIM FOR RELIEF

### (Negligence)

148.   The Hillandale Defendants incorporate by reference their Answers to Paragraphs 1 through 128, as though fully set forth herein.

149.   To the extent the allegations in this paragraph refer to Defendant Quality Egg, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations refer to the Hillandale Defendants, the Hillandale Defendants answers as follows: denied.

150.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny Hillandale Iowa LLC or Hillandale Farms of PA, Inc. sold any shell eggs to NuCal.  Denied in all other respects.

151.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by any of the Hillandale Defendants.  Otherwise denied.

152.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's losses, if any, were the result of actions taken by any of the Hillandale Defendants.  Otherwise denied.

### FOURTH CLAIM FOR RELIEF

### (Equitable Indemnification)

153.   The Hillandale Defendants incorporate by reference their Answers to Paragraphs 1 through 152, as though fully set forth herein.

154.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants admit that Hillandale Farms of Iowa, Inc. sold and shipped eggs to NuCal that were safe and marketable eggs that were fit for human consumption and retail sale. The Hillandale Defendants deny that Hillandale Iowa LLC or Hillandale Farms of PA, Inc. sold any shell eggs to NuCal.  Otherwise, denied.

155.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

156.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by the Hillandale Defendants.  Otherwise denied.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

157.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

## FIFTH CLAIM FOR RELIEF

### (Negligent Interference with Prospective Economic Advantage)

158.   The Hillandale Defendants incorporates by reference their Answers to Paragraphs 1 through 152, as though fully set forth herein.

159.   The Hillandale Defendants are without knowledge or information with respect to NuCal's relationships with its retail customers and therefore deny the same.

160.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

161.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

162.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by the Hillandale Defendants.  Otherwise denied.

# SIXTH CLAIM FOR RELIEF

## (Unfair Competition)

163.   The Hillandale Defendants incorporate by reference their Answers to Paragraphs 1 through 162, as though fully set forth herein.

164.   The allegations contained in Paragraph 176 of Plaintiff's Complaint state conclusions of law to which no response is required.

165.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: denied.

166.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by the Hillandale Defendants.  Otherwise denied.

167.   To the extent the allegations in this paragraph use the collective term "defendants" to refer to parties other than the Hillandale Defendants, such allegations are not directed at the Hillandale Defendants and therefore no response is required.  To the extent the allegations containing the collective term "defendants" refer to any of the Hillandale Defendants, the Hillandale Defendants answer as follows: the Hillandale Defendants deny that NuCal's damages, if any, were the result of actions taken by the Hillandale Defendants.  Otherwise denied.

## PRAYER FOR RELIEF

1.   The Hillandale Defendants deny that NuCal is entitled to any damages, punitive damages, indemnification, declaratory judgment, restitution, attorneys' fees and

costs, or any other relief set forth in the Prayer for Relief following Plaintiff's Sixth Claim for Relief, including subparts 1 through 7.

### AFFIRMATIVE AND ADDITIONAL DEFENSES

To the extent not already specifically addressed above, the Hillandale Defendants deny each and every allegation directed toward the Hillandale Defendants, demanding strict proof thereof.   As for affirmative and additional defenses and pursuant to the Federal Rules of Civil Procedure, the Hillandale Defendants alleges, upon information and belief, as follows:

### AFFIRMATIVE DEFENSE NO. 1

Plaintiff's Complaint fails in whole or in part to state a claim upon which relief can be granted.

### AFFIRMATIVE DEFENSE NO. 2

The Hillandale Defendants deny that Plaintiff was injured to the extent alleged and call for strict proof thereof.

### AFFIRMATIVE DEFENSE NO. 3

Plaintiff has not suffered any damages for which it is entitled to relief from the Hillandale Defendants.

### AFFIRMATIVE DEFENSE NO. 4

Plaintiff's alleged injuries and damages were due to, and proximately caused by, in whole or in part, other events, conditions, instrumentalities, products and/or acts or omissions of individuals and/or entities over whom or which the Hillandale Defendants exercised no control and had no obligation to exercise such control.

### AFFIRMATIVE DEFENSE NO. 5

Plaintiff's alleged injuries and damages were due to, and proximately caused by, in whole or in part, a preexisting, intervening, or superseding condition or other cause.

### AFFIRMATIVE DEFENSE NO. 6

Plaintiff's claims are barred, in whole or in part, by its own misconduct.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

**AFFIRMATIVE DEFENSE NO. 7**

Plaintiff's claims are barred in whole or in part by the doctrine of assumption of risk.

**AFFIRMATIVE DEFENSE NO. 8**

Plaintiff's clams are barred in whole or in part by the doctrines of contributory and comparative negligence.

**AFFIRMATIVE DEFENSE NO. 9**

At all material times, the Hillandale Defendants acted with due care and complied with applicable statutory, regulatory, and common law requirements.  Accordingly, some or all of Plaintiff's claims are or may be barred by the Hillandale Defendants' compliance with all applicable state, federal, and local laws and regulations.

**AFFIRMATIVE DEFENSE NO. 10**

The products sold by Hillandale Farms of Iowa, Inc. conformed to their intended design and purpose and to the customary or state of the art designs, methods, standards and techniques of manufacturing, inspecting, testing and marketing of other manufacturers of similar products.

**AFFIRMATIVE DEFENSE NO. 11**

The Hillandale Defendants are entitled to all amounts of all permissible statutory deductions and/or setoffs including all payments made by any collateral source and funds paid in settlement on behalf of other alleged joint tortfeasors and settling parties.

**AFFIRMATIVE DEFENSE NO. 12**

Plaintiff's damages claims are barred in whole or in part because economic and/or consequential damages are not recoverable under the legal theories asserted.

**AFFIRMATIVE DEFENSE NO. 13**

The alleged damages of Plaintiff, if any, have been mitigated, in whole or in part, by reimbursement from collateral sources.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

**AFFIRMATIVE DEFENSE NO. 14**

Plaintiff's claims against the Hillandale Defendants are barred or must be reduced to the extent Plaintiff failed to mitigate, reduce, or otherwise avoid their damages, if any, by the doctrine of avoidable consequences, and/or have "unclean hands".

**AFFIRMATIVE DEFENSE NO. 15**

Any award of punitive damages against the Hillandale Defendants in this matter based on the Hillandale Defendants' conduct outside of this jurisdiction would impose unreasonable state limitations on interstate commerce in violation of the Commerce Clause of the United States Constitution and would be in violation of the United States Supreme Court's holding in *State Farm v. Campbell*, 538 U.S. 408 (2003).

**AFFIRMATIVE DEFENSE NO. 16**

Any award of punitive damages against the Hillandale Defendants in this matter would violate the Hillandale Defendants' guarantees of due process, equal protection, property and protection against excessive fines under the Fourteenth Amendment to the United States Constitution and under applicable law of this jurisdiction.

**AFFIRMATIVE DEFENSE NO. 17**

Punitive damages may not be awarded:

a) Without proof of every element beyond a reasonable doubt, or in the alternative without proof by clear and convincing evidence;

b) Without bifurcating the trial of all punitive issues, including punitive liability;

c) With no limits, including the maximum amount that a jury may impose in this jurisdiction;

d) With no limits, including the constitutional prohibition against punitive damages awards being greater than a single-digit multiplier of any compensatory damages award, see *State Farm v. Campbell*, 538 U.S. 408 (2003);

e) Which improperly compensate Plaintiff for elements of damage not otherwise recognized under the laws of this jurisdiction;

f) Without standards or sufficient clarity for determining the appropriateness or appropriate size of the award;

g) Without consideration of the three constitutional guideposts of reprehensibility, ratio and civil penalties, see *State Farm v. Campbell*, 538 U.S. 408 (2003);

h) Without appropriate instructions on the limits of punitive damages imposed by the applicable principles of deterrence and punishment;

i) Under a vague and arbitrary standard that does not define the necessary conduct or mental state required for punitive damages; and

j) Without judicial review on the basis of objective standards, including the three constitutional guideposts of reprehensibility, ratio and civil penalties, see *State Farm v. Campbell*, 538 U.S. 408 (2003).

## AFFIRMATIVE DEFENSE NO. 18

Plaintiff's claims are limited by this jurisdiction's cap or limitation on punitive damages.

## AFFIRMATIVE DEFENSE NO. 19

Plaintiff has an adequate remedy at law, and thus its claims for equitable relief should be denied.

## AFFIRMATIVE DEFENSE NO. 20

Plaintiff's alleged damages are speculative, conjectural and not the foreseeable consequences of the Hillandale Defendants' conduct.

## AFFIRMATIVE DEFENSE NO. 21

Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, and/or unclean hands.

## AFFIRMATIVE DEFENSE NO. 22

The Hillandale Defendants made no warranties that were relied upon by Plaintiff.

## AFFIRMATIVE DEFENSE NO. 23

Plaintiff's warranty-based claims are barred by Plaintiff's failure to give proper or timely notice of any alleged breach of warranty.

## AFFIRMATIVE DEFENSE NO. 24

To the extent not incorporated above, the Hillandale Defendants raise all affirmative defenses available under the law of the forum in which the alleged cause of action arose.

## AFFIRMATIVE DEFENSE NO. 25

The Hillandale Defendants reserve the right to raise any additional defenses that it may have or as may be revealed by discovery or investigation in this matter.

## AFFIRMATIVE DEFENSE NO. 26

Plaintiff's claims and alleged damages are barred under the economic loss doctrine.

**WHEREFORE**, having fully answered Plaintiff's Second Amended Complaint, the Hillandale Defendants request that Plaintiff's Second Amended Complaint be dismissed in its entirety, and that the Hillandale Defendants be awarded their costs and attorneys' fees, and for such other and further relief as the Court deems just and proper.

## <u>CROSS-CLAIM AGAINST DEFENDANT QUALITY EGG LLC.</u>

The Hillandale Defendants, for their cross-claim against Defendant Quality Egg LLC ("Quality Egg") state as follows:

## FACTUAL ALLEGATIONS

1.      During the relevant time period, Hillandale Farms of Iowa, Inc. was in the business of marketing eggs, including marketing eggs produced by Quality Egg in Quality Egg's Alden, Iowa egg production facility.

2.      During the relevant time period, Hillandale Iowa LLC was in the business of processing eggs, including eggs produced by Quality Egg in Quality Egg's Alden, Iowa egg production facility.

3.      Between May and July 2010, Hillandale Iowa LLC processed, and Hillandale Farms of Iowa, Inc. shipped, several loads of eggs to NuCal pursuant to transactions through the Egg Clearinghouse Inc. (ECI) system.  Those eggs were laid by hens in the Alden, Iowa egg production facility which was leased, operated, and managed

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

by Quality Egg.

4.    In mid-August 2010, the Hillandale Defendants learned from representatives of Quality Egg that FDA was investigating Quality Egg's involvement in a potential outbreak of *Salmonella Enteritidis* associated with shell egg consumption. Hillandale Farms of Iowa, Inc. was contacted by FDA and eventually recalled certain lots of eggs, including eggs it shipped to NuCal from Quality Egg's Alden, Iowa egg facility.

5.    Prior to mid-August 2010, the Hillandale Defendants did not have knowledge of any test results, whether environmental test results, egg test results, or chicken tissue results, testing positive for *Salmonella Enteritidis* in or from the Alden, Iowa egg production facility.   No employee or representative of Quality Egg or any affiliated entities ever informed the Hillandale Defendants of the existence of such test results prior to mid-August 2010.

6.    At the time of Hillandale Farms of Iowa, Inc.'s recall, Quality Egg:

(a)    Leased the Alden facility from a company owned by its employee John Glessner;

(b)    Operated the Alden egg production facility;

(c)    Supplied all the pullets for the Alden egg production facility;

(d)    Owned all the laying hens and pullets in the Alden egg production facility;

(e)    Supplied all the feed for the laying hens and pullets in the Alden egg production facility;

(f)    Managed the cleaning of the Alden egg production facility; and

(g)    Managed the employees who worked in the Alden egg production facility.

7.    Quality Egg or an affiliated entity provided all of the pullets used to populate the Alden egg production facility, which pullets ultimately produced the eggs Hillandale Farms of Iowa, Inc. sold and shipped to Plaintiff NuCal.

8.    Quality Egg's own consultant, Dr. Charles Hofacre, has admitted that these

41

pullets, and/or the meat and bone meal the pullets consumed, all of which was supplied by or to Quality Egg, were the source of the *Salmonella Enteritidis* outbreak that led to Hillandale Farms of Iowa, Inc.'s recall.

9.      Any processing Hillandale Iowa LLC or Hillandale Farms of Iowa, Inc. performed on eggs Hillandale Farms of Iowa, Inc. sold and shipped to NuCal, which in turn they purchased from Quality Egg, related solely to the outside of the egg.

10.      To the extent any eggs NuCal purchased from Hillandale Farms of Iowa, Inc. were contaminated, which contamination the Hillandale Defendants deny, the contamination was contained in the liquid portion of the egg, rather than on the shell of the egg.  Therefore, such contamination, if any, would have come from the hens owned, raised, and fed by Quality Egg.

11.      On information and belief, Quality Egg and its affiliates were involved in the management of:

> (a) the Alden, Iowa egg production facility;

> (b) the pullet farms which supplied pullets for the Alden, Iowa egg production facility; and

> (c) the feed mill which supplied feed to the Alden, Iowa egg production facility.

12.      On information and belief, Quality Egg had a role in:

> (a) failing to control *Salmonella Enteritidis* in pullets supplied to the Alden, Iowa egg production facility;

> (b) failing to control *Salmonella Enteritidis* in the feed supplied to the Alden, Iowa egg production facility; and/or

> (c) failing to maintain the Alden, Iowa egg production facility in a manner so as to control and prevent the proliferation of *Salmonella Enteritidis* in laying hens and the eggs each hen laid.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

## COUNT I
## Equitable Indemnity
## (As against Quality Egg LLC)

13.     The Hillandale Defendants incorporate by reference the allegations contained in paragraphs 1-12 directly above, as if fully set forth herein.

14.     In the event Plaintiff establishes liability against any Hillandale Defendant, liability which the Hillandale Defendants expressly deny, the Hillandale Defendants are entitled to indemnity from Quality Egg for its negligence, strict liability, breach of contract, breach of express warranty, and/or breach of implied warranty, in supplying pullets for the Alden Facility which were infected with *Salmonella Enteritidis*, in supplying feed for the hens at the Alden Facility which was infected with *Salmonella Enteritidis,* in failing to maintain the Alden Facility and the birds therein in such a manner as to prevent the spread and contamination of *Salmonella Enteritidis* within the birds and the eggs they produced, for supplying eggs which were contaminated with *Salmonella Enteritidis*, and/or for failing to inform the Hillandale Defendants that the eggs Hillandale Farms of Iowa, Inc. was marketing came from facilities potentially contaminated with *Salmonella Enteritidis,* from pullets raised in facilities potentially contaminated with *Salmonella Enteritidis*, from hens potentially infected with *Salmonella Enteritidis*, and/or from hens fed feed that was potentially contaminated with *Salmonella Enteritidis*.  Quality Egg knew or should have known that the pullets, the laying hens, their feed, and/or the eggs it produced were contaminated or infected with *Salmonella Enteritidis*.

15.     The Hillandale Defendants are entitled to full indemnification from Quality Egg, including reimbursement of any judgment or payments made on behalf of the Hillandale Defendants and recovery of attorneys' fees and costs in defending against Plaintiff's claims and in pursuing this Cross-Claim.

## COUNT II
## Breach of the Implied Warranty of Merchantability
## (As against Quality Egg LLC)

16.     Hillandale Farms of Iowa, Inc. incorporates by reference the allegations contained in paragraphs 1-15 directly above, as if fully set forth herein.

17.     Hillandale Farms of Iowa, Inc. marketed and sold eggs produced by Quality Egg at Quality Egg's Alden, Iowa egg production facility.  Each such purchase of eggs by Hillandale Farms of Iowa, Inc. from Quality Egg constituted an implied contract.

18.     Pursuant to the Uniform Commercial Code, each purchase included an implied warranty of merchantability for the goods sold.  To be merchantable under the Uniform Commercial Code, the goods must be of fair average quality and must be fit for the ordinary purposes for which such goods are used.

19.     If Plaintiff succeeds in proving its allegations that the eggs shipped by Hillandale Farms of Iowa, Inc. were contaminated and not of fair average quality or not fit for the ordinary purposes for which such goods are used, then such contamination was present at the time Quality Egg sold the eggs to Hillandale Farms of Iowa, Inc.

20.     To the extent Plaintiff establishes liability against Hillandale Farms of Iowa, Inc. or recovers any damages from Hillandale Farms of Iowa, Inc. in this matter, which liability and damages Hillandale Farms of Iowa, Inc. expressly denies, such damages were caused by Quality Egg's failure to perform under its implied contract and its breach of the implied warranty of merchantability.  Therefore, Hillandale Farms of Iowa, Inc. is entitled to full indemnification from Quality Egg, including reimbursement of any judgment or payments made on behalf of Hillandale Farms of Iowa, Inc. and recovery of attorneys' fees and costs in defending against NuCal's claims and in pursuing this Cross-Claim, as a result of Quality Egg's breach of the implied warranty of merchantability.

**COUNT III**
**Contribution**
**(As against Quality Egg LLC)**

21.     The Hillandale Defendants incorporate by reference the allegations contained in paragraphs 1-20 directly above, as if fully set forth herein.

22.   In the event Plaintiff establishes liability against any Hillandale Defendant, liability which the Hillandale Defendants expressly deny, the Hillandale Defendants are entitled to indemnity from Quality Egg LLC for its negligence, strict liability, breach of contract, breach of express warranty, and/or breach of implied warranty, in supplying pullets for the Alden Facility which were infected with *Salmonella Enteritidis*, in supplying feed for the hens at the Alden Facility which was infected with *Salmonella Enteritidis,* in failing to maintain the Alden Facility and the birds therein in such a manner as to prevent the spread and contamination of *Salmonella Enteritidis* within the birds and the eggs they produced, for supplying eggs which were contaminated with *Salmonella Enteritidis*, and/or for failing to inform the Hillandale Defendants that the eggs Hillandale Iowa LLC was processing and Hillandale Farms of Iowa, Inc. was marketing came from facilities potentially contaminated with *Salmonella Enteritidis,* from pullets raised in facilities potentially contaminated with *Salmonella Enteritidis*, from hens potentially infected with *Salmonella Enteritidis*, and/or from hens fed feed that was potentially contaminated with *Salmonella Enteritidis*.   Quality Egg LLC knew or should have known that the pullets, the laying hens, their feed, and/or the eggs they produced were contaminated or infected with *Salmonella Enteritidis*.

23.   Alternatively, the Hillandale Defendants are entitled to contribution from Quality Egg LLC in an amount commensurate with its relative degree of fault in causing or contributing to Plaintiff NuCal's alleged damages.

WHEREFORE, Defendants Hillandale Farms of Iowa, Inc., Hillandale Iowa LLC, and Hillandale Farms of PA, Inc. respectfully request and pray as follows:

1.   That, in the event judgment is entered against any of them, which they expressly deny, that Quality Egg LLC be ordered to indemnify the Hillandale Defendants for the full amount of any judgment plus its attorneys' fees and costs;

2.   For judgment over and against Quality Egg LLC for its pro rata share and contribution for the amount of any judgment entered against any of the Hillandale Defendants and/or Quality Egg LLC.

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS

1

Dated:  February 15, 2013

**FAEGRE BAKER DANIELS LLP**

2

3

/s/ Steven B. Toeniskoetter

Sarah L. Brew, admitted *pro hac vice*

Steven B. Toeniskoetter, SB # 248115

4

Kristin R. Eads, admitted *pro hac vice*

90 South Seventh Street, Suite 2200

5

Minneapolis, MN  55402-3901

Telephone: (612) 766-7000

6

Facsimile: (612) 766-1600

sarah.brew@FaegreBD.com

7

steve.toeniskoetter@FaegreBD.com

kristin.eads@FaegreBD.com

8

9

*Attorneys for Defendants*
*Hillandale Farms of Iowa, Inc.,*
*Hillandale Iowa LLC, and*

10

*Hillandale Farms of PA, Inc.*

11

12

dms.us.51592073.04

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILLANDALE DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT
AND CROSS CLAIM AGAINST THE DECOSTER DEFENDANTS